[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 993 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 994 
The appellant, Renard Marcel Daniel, was convicted of capital murder for the killings of Loretta A. McCulloch and John Wesley Brodie. The murders were made capital because the appellant committed them by one act or pursuant to one scheme or course of conduct. See § 13A-5-40(a)(10), Ala. Code 1975. By a vote of 10-2, the jury recommended that he be sentenced to death. The trial court accepted the jury's recommendation and sentenced the appellant to death. The appellant filed a motion for a new trial, which the trial court denied after conducting a hearing. This appeal followed.
The appellant raises some issues on appeal that he did not raise at trial. Although the lack of an objection at trial will not bar our review of an issue in a case that involves the death penalty, it will weigh against any claim of prejudice the appellant may raise. See Ex parte Kennedy, 472 So.2d 1106 (Ala. 1985). Rule 45A, Ala. R.App. P., provides:
 "In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review . . . whenever such error has or probably has adversely affected the substantial right of the appellant."
 "[This] plain-error exception to the contemporaneous-objection rule is to be `used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting United States v. Frady, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982)).
The evidence showed that, in September 2001, the victims, Loretta McCulloch and John Brodie, had been dating for approximately five years and were preparing to move into an apartment together. The *Page 995 
appellant lived in one of the other apartments, and George Jackson lived in another of the apartments.
Jackson testified that, on the evening of September 26, 2001, he went to the appellant's apartment, and they drank some beer and smoked a marijuana cigarette. That afternoon, they had seen the victims moving into the apartment next to the appellant's. Around 10:30 p.m., they decided to go next door and introduce themselves. At that time, the victims appeared to be very drunk.
The four played cards for a few minutes. At some point, Brodie used the words "brother" and "nigger" while talking to the appellant, and the appellant became upset and "started raising Cain." (R. 198-99.) The victims both apologized, and Jackson tried to calm the appellant by telling him that the victims were drunk and did not mean anything. The argument continued for 5 to 10 minutes, and the victims asked the appellant and Jackson to leave. During the argument, the appellant pulled out a handgun and had it by his side, and McCulloch tried to get it from him and continued to tell them to leave.
Jackson testified that he and the appellant walked out of the apartment, that the appellant asked him for a cigarette, that he said the cigarettes must still be in the victims' apartment, and that McCulloch started holding the cigarettes and taunting the appellant with them. When McCulloch refused to give them to him, the appellant pulled the handgun up and said, "`Bitch, if you don't give me my cigarettes, I'm going to kill you.'" (R. 204.) Jackson tried to convince the appellant to leave, but the appellant refused. Jackson testified that he then went to the appellant's apartment to get his coat and keys; that, as he was leaving the apartment, he saw the appellant standing on the bottom steps to the victims' apartment shooting into the doorway; that he heard four gunshots and saw fire coming out of the end of the handgun; and that the handgun looked like a .45 or a .380. The appellant then ran into his apartment, and Jackson went to his apartment. After he got to his apartment, Jackson heard McCulloch "hollering, `Are you all right? Are you all right," and he then heard two more gunshots. (R. 208.) Subsequently, the appellant went to Jackson's apartment and said, "`George, I told you I'm a killer.'" (R. 248.)
Around 7:00 a.m. the next day, Jackson saw the appellant and said, "`Renard, please tell me you ain't killed those folks last night.'" (R. 210.) The appellant indicated that he had and that their bodies were in the doorway. He also "flashed" some bloody bullet cartridges and threw them into the garbage dumpster. (R. 210.) Thereafter, Jackson told his mother and stepfather about the incident, and his stepfather reported the incident to law enforcement authorities.
Julie Farrow lived in the same apartment complex as the appellant, Jackson, and the victims. She testified that, between 10:45 p.m. and 11:00 p.m. on September 26, 2001, while she was taking her dog for a walk, she heard four gunshots in rapid succession. A few minutes later, she heard "a couple or three more" gunshots. (R. 295.) On cross-examination, she admitted that she had told law enforcement officers that the first gunshots were loud and that the subsequent gunshots sounded like they had come from a different firearm because they were not as loud.
K.V. Hill testified that his son was in the business of renting apartments, including those in the apartment complex where the appellant lived, and that he had hired the appellant to work for his son's business. He also testified that the appellant called him around 7:30 p.m. or 8:00 p.m. on September 26, 2001, to request an advance on his pay; that he refused the request; that *Page 996 
the appellant called again between 10:30 p.m. and 11:30 p.m. and requested money; and that he agreed to let the appellant come by and get money because he said he did not have any food. After he arrived, the appellant talked for a while and asked if he could sit for a while after Hill went to bed because he did not have a jacket, but he never asked for money. Finally, Hill identified a vehicle that the appellant had had towed to the apartments when he moved in.
James Logan, an evidence technician with the Birmingham Police Department, testified that, on September 27, 2001, he and other officers entered the victims' apartment and secured the scene. At that time, the victims were on the kitchen floor just inside of the door and there were footprints in what appeared to be blood on the kitchen floor. Logan testified that he collected eight shell casings, seven spent projectiles, one live round, beer cans and bottles, and two shoe impressions from inside of the apartment. Four of the spent projectiles were in the wall, and two were in the floor where the victims were. He also testified that it appeared that three of the projectiles that were in the wall had been fired by someone who was on the steps or the ground outside of the apartment door. He further testified that they found two shell casings outside of the victims' apartment; one shell casing in the dumpster to which Jackson referred; and a pair of tennis shoes in the trunk of the vehicle the appellant had had towed to the apartments. The tennis shoes were the same size as two other pairs of shoes officers found in the appellant's apartment.
Forensic testing revealed that the shoe impressions officers recovered were made by tennis shoes that were the same size and pattern as the tennis shoes officers retrieved from the trunk of the vehicle the appellant had had towed to the apartments. Also, DNA testing showed that blood on the right tennis shoe matched McCulloch's DNA profile. Finally, firearms and toolmarks testing showed that the projectiles and shell casings were fired from the same firearm and that that firearm was probably a .380 semiautomatic.
Autopsies revealed that the victims sustained several gunshot wounds and that they died as a result of those wounds. Brodie had a gunshot wound to the head that was made from a distance of three inches to three feet, and McCulloch had a contact gunshot wound to the head. Testing showed that Brodie's blood alcohol content was .32 and McCulloch's was .17.
The appellant testified that, on the evening of September 26, 2001, he and Jackson drank beer and smoked marijuana together and that Jackson suggested that they go meet Brodie and McCulloch. He also testified that, around 8:00 p.m. or 8:30 p.m., they went to the victims' apartment, stayed for 15-20 minutes, and decided to leave and return later to play cards; that they then went back to his apartment, drank some beer, and smoked more marijuana; that, between 9:15 p.m. and 9:45 p.m., they returned to the victims' apartment and played cards; that McCulloch and Jackson got into a fight after McCulloch made comments about Jackson; that Jackson threatened to hurt McCulloch; that Brodie attacked him; and that he heard a gunshot, turned toward Jackson, and heard more gunshots. The appellant further testified that Jackson shot McCulloch in the head and that she fell to the floor; that Jackson shot Brodie in the back, that Brodie fell to the floor and continued to move, and that Jackson grabbed Brodie's head and shot him in the head; and that he returned to his apartment. Finally, he testified that Jackson had a .380 semiautomatic handgun and that the tennis shoes officers recovered *Page 997 
from the vehicle he had had towed to the apartments belonged to Jackson.
On cross-examination, the appellant admitted that he had previously told law enforcement officers that Jackson did not have a gun and that he did not think that Jackson was the type of person who would have committed the murders. He also admitted that he made three statements about the offense and that he did not mention Jackson as being the perpetrator in any of them. He further admitted that he had owned a .380 semiautomatic handgun at one time. Finally, he admitted that he had made numerous inconsistent statements about other details about his conduct and the murders.
Also, during its examination of Jackson and in its case-in-chief, the defense presented evidence about inconsistencies between the information Jackson had given law enforcement officers during their investigation of this case and his trial testimony. Finally, Donald Bass, Farrow's brother, testified that he had previously seen Jackson with a gun.
 I.
First, the appellant argues that the State did not present sufficient evidence to support his conviction. Although he couches his argument in terms of the sufficiency of the evidence, he appears to challenge both the sufficiency and the weight of the evidence.
 "In deciding whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, the evidence must be reviewed in the light most favorable to the prosecution. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979). Conflicting evidence presents a jury question not subject to review on appeal, provided the state's evidence establishes a prima facie case. Gunn v. State, 387 So.2d 280 (Ala.Cr.App.), cert. denied, 387 So.2d 283
(Ala. 1980). The trial court's denial of a motion for a judgment of acquittal must be reviewed by determining whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty. Thomas v. State, 363 So.2d 1020 (Ala.Cr.App. 1978). In applying this standard, the appellate court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199
(Ala.Cr.App. 1983); Thomas v. State. When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for a judgment of acquittal by the trial court does not constitute error. Young v. State, 283 Ala. 676, 220 So.2d 843
(1969); Willis v. State."
Breckenridge v. State, 628 So.2d 1012, 1018 (Ala.Crim.App. 1993).
"The following are capital offenses:
 ". . . .
 "(10) Murder wherein two or more persons are murdered by the defendant by one act or pursuant to one scheme or course of conduct."
§ 13A-5-40(a), Ala. Code 1975.
Jackson's testimony concerning the circumstances surrounding the offense, coupled with the corroborating testimony of Farrow and Logan and the physical and forensic evidence, was sufficient to establish that the appellant murdered the victims pursuant to one scheme or course of conduct. Therefore, to the extent the appellant challenges the sufficiency of the evidence, his argument is without merit.
Further,
 "[i]n Johnson v. State, 555 So.2d 818, 819-20
(Ala.Cr.App. 1989), this court noted *Page 998 
the difference in `sufficiency' and `weight' as follows:
 "`The weight of the evidence is clearly a different matter from the sufficiency of the evidence. The sufficiency of the evidence concerns the question of whether, "viewing the evidence in the light most favorable to the prosecution, [a] rational factfinder could have found the defendant guilty beyond a reasonable doubt." Tibbs v. Florida, 457 U.S. 31, 37, 102 S.Ct. 2211, 2215, 72 L.Ed.2d 652 (1982). Accord, Prantl v. State, 462 So.2d 781, 784
(Ala.Cr.App. 1984).
 "`. . . .
 "`In contrast, "[t]he `weight of the evidence' refers to `a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other.'" Tibbs v. Florida, 457 U.S. at 37-38
[102 S.Ct. at 2216] (emphasis added). We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial. E.g., Franklin v. State, 405 So.2d 963, 964 (Ala.Cr.App.), cert. denied, 405 So.2d 966 (Ala. 1981); Crumpton v. State, 402 So.2d 1081, 1085 (Ala.Cr.App.), cert. denied, 402 So.2d 1088 (Ala. 1981); Nobis v. State, 401 So.2d 191, 198 (Ala.Cr.App.), cert. denied, 401 So.2d 204 (Ala. 1981). "`[T]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine.'" Harris v. State, 513 So.2d 79, 81 (Ala.Cr.App. 1987) (quoting Byrd v. State, 24 Ala.App. 451, 136 So. 431 (1931)).[']
 "(Emphasis in original.) See Smith v. State, 604 So.2d 434 (Ala.Cr.App. 1992); Pearson v. State, 601 So.2d 1119 (Ala.Cr.App. 1992); Curry v. State, 601 So.2d 157 (Ala.Cr.App. 1992)."
Zumbado v. State, 615 So.2d 1223, 1240-41 (Ala.Crim.App. 1993). Also, "[t]he weight and probative value to be given to the evidence, the credibility of the witnesses, the resolution of conflicting testimony, and inferences to be drawn from the evidence are for the jury." Smith v. State, 698 So.2d 189, 214
(Ala.Crim.App. 1996), aff'd, 698 So.2d 219 (Ala. 1997).
In this case, the appellant's contentions regarding inconsistent testimony and credibility of witnesses were for the jury to decide. We will not invade the province of the jury and reweigh the evidence in this case. Therefore, to the extent the appellant challenges the weight of the evidence, his argument is not well-taken.
 II.
Second, the appellant argues that the trial court improperly denied his motion in limine to prevent the State from impeaching him with his prior convictions. Before the defense presented its evidence, defense counsel advised the trial court that they intended to call the appellant to testify and asked the trial court to prohibit the State from eliciting information about his prior convictions. The State argued that the convictions were admissible for impeachment purposes, and the trial court denied the motion. Thereafter, the appellant testified during direct examination that he had one second-degree burglary conviction, one first-degree receiving stolen property conviction, and three unlawful distribution of a controlled substance convictions.
With regard to impeachment by evidence of prior convictions, Rule 609(a), Ala. R. Evid., provides, in pertinent part:
 "For the purpose of attacking the credibility of a witness,
 "(1)(A) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess *Page 999 
of one year under the law under which the witness was convicted, and
 "(1)(B) evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and
 "(2) evidence that any witness has been convicted of a crime shall be admitted it if involved dishonesty or false statement, regardless of the punishment."
The prior convictions were relevant to impeach the appellant's credibility. Furthermore, the prejudicial effect of admitting those convictions was diminished because the prior offenses did not involve murder and were thus different from the capital offense for which he was being tried. Therefore, the trial court could have reasonably concluded that the probative value of admitting evidence about the prior convictions outweighed its prejudicial effect.
Furthermore, during its guilt phase oral charge, the trial court instructed the jury as follows:
 "Now, you've heard evidence of prior convictions of the defendant in this case. That's admissible not to prove that he did or did not commit this offense. That's not the reason it's admissible. It's admissible because it goes to the credibility of the defendant as a witness and how much weight you can put on his testimony based on the fact that he has these prior felony convictions. That's the only purpose it's admissible. Its up to you [to] decide how much weight, if any, it has on his credibility as a witness. But it's admissible for your consideration."
(R. 866.) The trial court made it clear that the jury could not use the prior convictions as substantive evidence of the appellant's guilt in this case and that the only purpose for which the convictions were admissible was to impeach the appellant's credibility. Therefore, it properly limited the jury's consideration of the evidence about the appellant's prior convictions. See Snyder v. State, 893 So.2d 482 (Ala. 2001);Ex parte Minor, 780 So.2d 796 (Ala. 2000).
For these reasons, we do not find that there was any error in this regard.
 III.
Third, the appellant argues that his trial attorneys rendered ineffective assistance during the penalty phase of the trial because they called only his mother to testify. Specifically, he contends that they should also have called his sister, Tammy Daniel, and McCulloch's father, Spencer Sims, who subsequently testified during the sentencing hearing before the trial court and asked the trial court to impose a sentence of imprisonment for life without the possibility of parole. Appellate counsel raised this argument for the first time during the hearing on the appellant's motion for a new trial, but he did not present any evidence in support of his contentions.
To prevail on an ineffective-assistance-of-counsel claim, the appellant must show that 1) his counsel's performance was deficient and 2) he was prejudiced by the deficient performance.See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674 (1984). Further, he must present more than bare allegations to support his claim.
 "There is no error in a trial court's denial of a motion for new trial where no evidence is offered in support of that motion. Tucker v. State, 454 So.2d 541, 547-48 (Ala.Cr.App. 1983), reversed on other grounds, 454 So.2d 552 (Ala. 1984); McKinnis v. State, 392 So.2d 1266, 1269 (Ala.Cr.App. 1980), cert. denied, 392 So.2d 1270 (Ala. 1981). The motion itself was unverified and was not accompanied by any supporting affidavits. Consequently, *Page 1000 
the assertions of counsel contained therein `are bare allegations and cannot be considered as evidence or proof of the facts alleged.' Thompson v. State, 444 So.2d 899, 902 (Ala.Cr.App. 1984) (quoting Daniels v. State, 416 So.2d 760, 762 (Ala.Cr.App. 1982)); Smith v. State, 364 So.2d 1, 14 (Ala.Cr.App. 1978). Similarly, statements made by counsel during a hearing on a motion for new trial cannot be considered evidence in support of the motion. Vance v. City of Hoover, 565 So.2d 1251, 1254 (Ala.Cr.App. 1990)."
Arnold v. State, 601 So.2d 145, 154-55 (Ala.Crim.App. 1992).See also Blount v. State, 557 So.2d 1333 (Ala.Crim.App. 1989). In this case, the appellant did not present any evidence to support his contention that his trial attorneys had rendered ineffective assistance. Counsel's bare allegations during the hearing on the motion for a new trial cannot be considered evidence in support of the motion. Therefore, the appellant did not satisfy his burden of proof under Strickland.
 IV.
Fourth, the appellant argues that the trial court did not consider all nonstatutory mitigating evidence before it sentenced him to death. Specifically, he contends that the trial court did not consider his alleged intoxication at the time of the offense and Spencer Sims' request that he be sentenced to imprisonment for life without the possibility of parole. Because we must remand this case for the trial court to enter a new sentencing order, as explained in Part VI of this opinion, we pretermit discussion of this argument at this time.
 V.
Fifth, the appellant argues that the trial court should have granted his motion for a new trial on the ground that George Jackson's testimony should have been corroborated because he could have been charged as an accomplice. Because he raised this argument for the first time during the hearing on his motion for a new trial, he did not properly preserve it for appellate review. See Hamrick v. State, 548 So.2d 652 (Ala.Crim.App. 1989). Accordingly, we review this argument for plain error.See Rule 45A, Ala. R.App. P.
 "`"An accomplice is defined as `an associate in crime; a partner or partaker in guilt.' Darden v. State, 12 Ala.App. 165, 167, 68 So. 550, 551
(1915)." Jacks v. State, 364 So.2d 397, 401-02
(Ala.Cr.App.), cert. denied, 364 So.2d 406 (Ala. 1978). See also Brownlee v. State, 545 So.2d 151, 159 (Ala.Cr.App. 1988), aff'd, 545 So.2d 166
(Ala.), cert. denied, 493 U.S. 874, 110 S.Ct. 208, 107 L.Ed.2d 161 (1989). This term has also been held to include all who are concerned in the crime, whether as principals, as accessories, or as aiders or abetters. 23 C.J.S. Criminal Law § 998 (1989).
 "`"The test for determining whether a witness is an accomplice is whether he or she could have been indicted and convicted for the offense charged, either as principal or accessory." Ex parte Dial, 387 So.2d 879, 881 (Ala. 1980), quoting Russell v. State, 365 So.2d 343 (Ala.Cr.App. 1978). See also Ex parte Bates, 461 So.2d 5, 6 (Ala. 1984); Brownlee, supra, 545 So.2d at 160; Jacks, supra, 364 So.2d at 401.'
"Willis, 570 So.2d at 761.
". . . However, when a defendant contends that a witness is an accomplice, he has the burden of proving that fact. Cumbo v.State, 368 So.2d 871 (Ala.Cr.App. 1978), cert. denied,368 So.2d 877 (Ala. 1979). Where there is no conflict in the testimony, the issue of whether a witness is an accomplice is a question of *Page 1001 
law for determination by the trial court. Id."
Bone v. State, 706 So.2d 1291, 1295 (Ala.Crim.App. 1997). When defense counsel first raised this argument during the hearing on the appellant's motion for a new trial, the trial court stated:
 "In my opinion Jackson was not a co-defendant or a co-conspirator.
 ". . . .
 ". . . The police had no evidence to suggest that he was the trigger person, or even involved as a co-conspirator. In fact, he's the one that went to the police. The bodies were not even discovered until he went to the police and told them about it and they sent a patrol car out to the location and found the bodies. I don't see where you could make an argument that he was a co-conspirator or co-defendant in the case. The only evidence even suggesting that is the defendant's testimony.
 ". . . .
 ". . . [F]rom what I heard I would not have found that Mr. Jackson would have been a co-conspirator. There was absolutely no evidence that he was a co-conspirator other than the testimony of the defendant, which I put very little if any weight on, quite frankly. I mean, in my opinion it was just a desperate effort to divert attention to the witness and off of the defendant, because he's the only other one the defendant could point out, quite frankly. I hear your argument, but I'm not buying it."
(R. 969-71.) Based on the evidence presented, we agree with the trial court's finding that Jackson was not an accomplice. As the trial court indicated, the only testimony regarding any potential involvement by Jackson came from the appellant, who testified that Jackson was solely responsible for the murders. Therefore, the trial court correctly found, as a matter of law, that Jackson was not an accomplice. Accordingly, the State was not required to corroborate Jackson's testimony.
Moreover, the State presented sufficient evidence to corroborate Jackson's testimony. Specifically, evidence regarding the location of the victims' bodies; Farrow's testimony about the number and timing of gunshots; evidence that blood that matched McCulloch's blood profile was on a tennis shoe that officers recovered from the trunk of a vehicle the appellant had had towed to the apartments; evidence that that tennis shoe was the same size as other shoes officers recovered from the appellant's apartment; evidence that there were two shoe impressions in the victims' apartment that were consistent with that tennis shoe; evidence regarding the number and locations of shell casings and projectiles; evidence that all of the shell casings and projectiles were fired from the same handgun; and evidence that the handgun used was probably a .380 semiautomatic corroborated Jackson's testimony. Therefore, the appellant's argument is without merit.
 VI.
Finally, the State argues that the trial court's written sentencing order in this case does not comply with the requirements of § 13A-5-47(d), Ala. Code 1975, which provides, in pertinent part:
 "Based upon the evidence presented at trial, the evidence presented during the sentence hearing, and the pre-sentence investigation report and any evidence submitted in connection with it, the trial court shall enter specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in Section 13A-5-49, each mitigating circumstance enumerated in Section 13A-5-51, and any additional mitigating circumstances offered pursuant to Section 13A-5-52."
In its sentencing order, the trial court did not make specific written findings concerning *Page 1002 
the existence or nonexistence of each aggravating circumstance enumerated in § 13A-5-49, Ala. Code 1975;[1] the existence or nonexistence of each mitigating circumstance enumerated in §13A-5-51, Ala. Code 1975;[2] and the existence or nonexistence of any additional, nonstatutory mitigating circumstances offered pursuant to § 13A-5-52, Ala. Code 1975.[3]
Also, in its sentencing order, the trial court erroneously states that, during the sentencing hearing before it, "no additional evidence was presented to the Court as to what the punishment should be." (C.R. 13.) However, as set forth in Part III of this opinion, Tammy Daniel and Spencer Sims appeared at that hearing and asked the trial court to impose a sentence of imprisonment for life without the possibility of parole. Further, in several places in the sentencing order, the trial court erroneously refers to the appellant's prior burglary conviction as a conviction for first-degree burglary rather than second-degree burglary.
Therefore, we remand this case with instructions that the trial court amend its sentencing order to comply with the requirements of § 13A-5-47(d), Ala. Code 1975, and to correct the above-referenced errors. If necessary, the trial court may reweigh the aggravating circumstances and the mitigating circumstances and resentence the appellant. On remand, the trial court shall take all necessary action to see that the circuit clerk makes due return to this court at the earliest possible time and within 42 days after the release of this opinion.
REMANDED WITH INSTRUCTIONS.
McMILLAN, P.J., and SHAW and WISE, JJ., concur; COBB, J., concurs in the result.
 On Return to Remand
[1] In its order, the trial court found that there were three aggravating circumstances — 1) the appellant committed the offense while he was under a sentence of imprisonment, see §13A-5-49(1), Ala. Code 1975; 2) the appellant had previously been convicted of another capital offense or felony that involved the use or threat of violence to the person, see § 13A-5-49(2), Ala. Code 1975; and 3) the appellant intentionally caused the death of two or more people by one act or pursuant to one scheme or course of conduct, see § 13A-5-49(9), Ala. Code 1975. Rather than making specific findings as to the existence or nonexistence of the remaining aggravating circumstances, it simply stated that the three previously referenced aggravating circumstances were the only aggravating circumstances it considered.
[2] In its order, the trial court found that the statutory mitigating circumstances set forth in § 13A-5-51(1), (4), (5), (6), and (7), Ala. Code 1975, did not exist. However, it did not address the existence or nonexistence of the statutory mitigating circumstances set forth in § 13A-5-51(2) and (3), Ala. Code 1975.
[3] Because it did not make any findings regarding the existence or nonexistence of nonstatutory mitigating circumstances, it is not clear from the sentencing order whether the trial court considered any nonstatutory mitigating evidence, although the defense offered such evidence, in sentencing the appellant to death.