Rel: May 5, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2022-2023

_____

## CR-2022-0965

_____

## Christopher Jarquis Guice

### v.

### State of Alabama

### Appeal from Pike Circuit Court
### (CC-19-493; CC-19-494; CC-19-495; and CC-19-496)

KELLUM, Judge.

In October 2019, Christopher Jarquis Guice was indicted for one count of attempted murder, see §§ 13A-6-2 and 13A-4-2, Ala. Code 1975; one count of discharging a firearm into an occupied building, see § 13A-11-61, Ala. Code 1975; one count of discharging a firearm into an occupied

vehicle, see § 13A-11-61, Ala. Code 1975; and one count of discharging a firearm into an unoccupied vehicle, see § 13A-11-61, Ala. Code 1975. Guice retained counsel to represent him, and a jury trial was conducted in February 2022.

The evidence adduced at trial indicated the following. On the night of June 9, 2019, Jilonte Hall went to a bar with two of his friends, Khalil Cummings and Nick McBryde. Guice and several of Guice's friends were at the bar. Hall and McBryde had previously had a dispute with Guice during which Guice pulled a gun on them. At the bar, Guice and his friends surrounded Hall, Cummings, and McBryde. Security intervened and escorted Hall and his friends outside. Hall admitted that he was angry about being forced to leave the bar and that he had said he was "going to come back up here and air this bitch out," meaning that he was going to shoot up the bar. (R. 89.) Hall then drove his friends to a Waffle House breakfast restaurant. Because he had "a bad feeling that something was going to happen," Hall backed into a parking space, remained in his vehicle as Cummings and McBryde got out, and even left his vehicle in drive. (R. 72.) Guice and some of his friends arrived at the Waffle House shortly thereafter. Guice got out of the vehicle in which he

2

was riding and approached the driver's side of Hall's vehicle. Hall said that Guice asked him if they "was good" and Hall "told him to go on about his business." (R. 73.) According to Hall, Guice initially walked away but then started shooting at him (giving rise to the attempted-murder charge). Hall immediately sped away.

Hall was shot several times in the leg, breaking a bone and resulting in lengthy rehabilitation. Hall denied that he shot at Guice first, and he denied owning a gun or having one in his possession at the time of the shooting. He admitted that an unfired 9mm bullet was found in his vehicle, but he said that, a week or two before the shooting, he had taken one of his friends "shooting in the country" and that the bullet found in the vehicle was from his friend's weapon. (R. 82.) He also said that the vehicle he was driving belonged to the mother of his child, who also regularly carried a gun. Hall was interviewed three times and, although he stated in all three interviews that both Guice and Guice's brother, Alex White, were present at the time of the shooting, he told police in the first and second interviews that it was White, not Guice, who had shot at him.

Eighteen shell casings, and one bullet that had markings indicating that it had misfired, were found in the parking lot of the Waffle House; all were "high-velocity" (R. 159) "7.62 by 39-caliber" casings likely fired from "a rifle-type firearm." (R. 162.)[1] The Alabama Department of Forensic Sciences determined that all the 7.62 by 39-caliber casings had been fired from the same weapon. The vehicle that was parked between Hall's vehicle and Guice's vehicle at the time of the shooting had a shattered window and a bullet hole in the driver's door, and a bullet fragment was found lodged in "the weather stripping of the vehicle" (giving rise to the discharging-a-firearm-into-an-unoccupied-vehicle charge). (R. 168.) Hall's vehicle had a bullet hole in the front windshield and several bullet holes on the driver's side; the window in the driver's door was shattered; and the front driver's side tire was "completely demolished" (giving rise to the discharging-a-firearm-into-an-occupied-vehicle charge). (R. 267.) An unfired 9mm bullet was found between the center console and the front passenger seat of Hall's vehicle, and a mason

---

[1]In addition, several 40-caliber and 380-caliber casings were found in a grassy area "well away from where the shooting incident occurred." (R. 172; 183.) However, they were "very weathered, as if they had been out there for some time," and were determined not to have been part of this incident. (R. 201.)

4

jar containing marijuana was found in the center console. A bullet fragment was also found in the brick wall of the Waffle House (giving rise to the discharging-a-firearm-into-an-occupied-building charge). Michael O'Hara, a sergeant with the Troy Police Department, testified that he had watched the surveillance video from the Waffle House and that, although the quality of the video was less than stellar, the first "muzzle flash" from a weapon that he saw on the video originated from the vicinity of Guice's vehicle. (R. 150.)

In his first statement to police, Guice said that he saw Hall outside the Waffle House and approached him in an attempt to straighten out the dispute they had had at the bar. Hall brandished a firearm, cocked it, and placed it in his lap. Guice was walking back to his vehicle to get his own weapon for his protection when he heard a shot fired. Feeling "threatened," Guice grabbed his weapon, which he said was a 9mm pistol, and returned fire. (R. 241.) As Hall drove away, Hall continued to fire at Guice, and Guice continued to return fire. In his second statement to police, Guice said that he did not use a 9mm firearm, but used "a DRACO, that shoots that 7.62 round," and he clarified that Hall had a revolver. (R. 246.)

In his defense, Guice called to testify Mathew Stephens, a detective with the Troy Police Department who had also testified for the State, and questioned him about the mason jar containing marijuana that he had found in Hall's vehicle after the shooting. Guice also called Macio McClendon, who was working security at the bar the night of June 9, 2019. McClendon said that the manager of the bar told him that Hall and Guice could not both be in the bar at the same time because they had previously had a dispute, and she asked McClendon to escort Hall out of the bar. McClendon said that Hall, rather than Guice, was escorted out only because Guice had been the first to arrive at the bar. McClendon said that when he asked Hall to leave, Hall became angry and belligerent. Eventually, McClendon was able to escort Hall outside, at which point Hall said he was going to call his brother or his cousin and that they would "shut the club down" (R. 353.) and "end up airing this bitch out" (R. 367.), which McClendon understood to mean Hall was going to shoot up the bar. According to McClendon, Hall also said that his dispute with Guice was "street business," and that he was going to shoot Guice that night. (R. 354.) McClendon said that Hall's threat was taken seriously and that the manager of the bar telephoned the police.

6

After both sides rested and the trial court instructed the jury on the applicable principles of law, including self-defense, first-degree, second-degree, and third-degree assault as lesser-included offenses of the attempted-murder charge, and reckless endangerment as a lesser-included offense of the remaining charges, the jury found Guice guilty of attempted murder, discharging a firearm into an occupied building, discharging a firearm into an occupied vehicle, and discharging a firearm into an unoccupied vehicle as charged in the indictment. The trial court sentenced him to 60 years' imprisonment for the attempted-murder conviction, to 20 years' imprisonment for the shooting-into-an-occupied-building conviction and for the shooting-into-an-occupied-vehicle conviction, and to 10 years' imprisonment for the shooting-into-an-unoccupied-vehicle conviction, the sentences to run concurrently.

After sentencing, Guice retained new counsel, who timely filed a motion for a new trial, alleging that the State had violated Brady v. Maryland, 373 U.S. 83 (1963), by suppressing evidence that Hall had marijuana in his vehicle at the time of the shooting, and alleging that his trial counsel was ineffective for withdrawing his request for a pretrial immunity hearing under § 13A-3-23(d), Ala. Code 1975, without his

7

knowledge or consent.[2] After a hearing, the trial court denied the motion.

On appeal, Guice reasserts his <u>Brady</u> claim and his ineffective-assistance-of-counsel claim, and he argues that the trial court erroneously denied him relief on those claims. We disagree.

Guice's motion for a new trial was neither verified nor supported by affidavit. Although he was afforded a hearing on his motion, he presented no evidence at the hearing in support of his claims; he presented only argument. "'At a hearing on a motion for new trial, the defendant has the burden of proving the allegations of his motion to the satisfaction of the trial court.'" <u>Miller v. State</u>, 913 So. 2d 1148, 1159 (Ala. Crim. App. 2004) (opinion on return to remand) (quoting <u>Miles v. State</u>, 624 So. 2d 700, 703 (Ala. Crim. App. 1993)).

> "There is no error in a trial court's denial of a motion for new trial where no evidence is offered in support of that motion. <u>Tucker v. State</u>, 454 So. 2d 541, 547-48 (Ala. Cr. App. 1983), reversed on other grounds, 454 So. 2d 552 (Ala. 1984); <u>McKinnis v. State</u>, 392 So. 2d 1266, 1269 (Ala. Cr. App. 1980), cert. denied, 392 So. 2d 1270 (Ala. 1981). The motion itself was unverified and was not accompanied by any supporting affidavits. Consequently, the assertions of counsel contained therein 'are bare allegations and cannot be considered as

---

[2]Guice also alleged in his motion that the evidence was insufficient to sustain his convictions and that his convictions for both attempted murder and shooting into an occupied vehicle violated double-jeopardy principles. He does not pursue those arguments on appeal.

evidence or proof of the facts alleged.' Thompson v. State, 444 So. 2d 899, 902 (Ala. Cr. App. 1984) (quoting Daniels v. State, 416 So. 2d 760, 762 (Ala. Cr. App. 1982)); Smith v. State, 364 So. 2d 1, 14 (Ala. Cr. App. 1978). Similarly, statements made by counsel during a hearing on a motion for new trial cannot be considered evidence in support of the motion. Vance v. City of Hoover, 565 So. 2d 1251, 1254 (Ala. Cr. App. 1990). …"

Arnold v. State, 601 So. 2d 145, 154 (Ala. Crim. App. 1992). See also Hall v. State, 266 So. 3d 759, 765-67 (Ala. Crim. App. 2016); Shanklin v. State, 187 So. 3d 734, 784 (Ala. Crim. App. 2014); and Daniel v. State, 906 So. 2d 991, 999-1000 (Ala. Crim. App. 2004). Because Guice presented no evidence in support of his claims, the trial court properly denied his motion for a new trial.

With respect to his trial counsel's alleged ineffectiveness, we note that, in addition to his claim that his trial counsel was ineffective for withdrawing the request for a pretrial immunity hearing, which he raised in his motion for a new trial, Guice argues for the first time in his brief on appeal that his trial counsel was ineffective for not adequately investigating his case. Guice did not include this specific claim in his motion for a new trial and "[i]t is well settled that ineffective assistance of counsel claims cannot be presented on direct appeal when they have not been first presented to the trial court." Shouldis v. State, 953 So. 2d

1275, 1285 (Ala. Crim. App. 2006). Moreover, this specific claim does not fall within the exception to preservation carved out by the Alabama Supreme Court in Ex parte Jefferson, 749 So. 2d 406 (Ala. 1999), because the record on appeal does not reflect on its face that counsel's investigation was so inadequate as to fall below an objective standard of reasonableness. See Montgomery v. State, 781 So. 2d 1007, 1010-11 (Ala. Crim. App. 2000). Therefore, this specific claim of ineffective assistance of counsel was not properly preserved for review.

Moreover, with respect to his Brady claim, we note that evidence indicating that Hall had marijuana in his vehicle at the time of the shooting was presented during Guice's trial. Not only did Det. Stephens testify to the presence of marijuana in Hall's vehicle when he testified for the State, but Guice then recalled Det. Stephens to testify during the defense's case-in-chief and questioned him extensively about the marijuana. "The term suppression 'means non-disclosure of evidence that the prosecutor, and not the defense attorney, knew to be in existence." Donahoo v. State, 552 So. 2d 887, 895 (Ala. Crim. App. 1989) (quoting Odgen v. Wolff, 522 F.2d 816, 820 (8th Cir. 1975)). "'[T]he rule of Brady applies only in situations which involve "discovery after trial of

10

information which had been known to the prosecution but <u>unknown to the defense</u>."'" <u>Bates v. State</u>, 549 So. 2d 601, 609 (Ala. Crim. App. 1989) (some emphasis added) (quoting <u>Gardner v. State</u>, 530 So. 2d 250, 256 (Ala. Crim. App. 1987), quoting in turn <u>United States v. Agurs</u>, 427 U.S. 97, 103 (1976)). Because it is clear from the record that evidence indicating that Hall had marijuana in his vehicle was disclosed during trial, not after the trial, there was no <u>Brady</u> violation.

Finally, although not argued by Guice on appeal, the record reflects that his sentence for shooting into an unoccupied vehicle is illegal. "Alabama courts have recognized that '[m]atters concerning unauthorized sentences are jurisdictional,'" <u>Ex parte McGowan</u>, 346 So. 3d 10, 13 (Ala. 2021) (quoting <u>Hunt v. State</u>, 659 So. 2d 998, 999 (Ala. Crim. App. 1994)), and "jurisdictional matters are of such magnitude that we take notice of them at any time and do so even <u>ex mero motu</u>." <u>Nunn v. Baker</u>, 518 So. 2d 711, 712 (Ala. 1987). Shooting into an unoccupied vehicle is a Class C felony, see § 13A-11-61(c), Ala. Code 1975, punishable by "not more than 10 years or less than 1 year and 1 day and [the sentence] must be in accordance with subsection (b) of Section 15-18-8

11

unless sentencing is pursuant to Section 13A-5-9." § 13A-5-6(a)(3), Ala. Code 1975. Section 15-18-8(b), Ala. Code 1975, provides, in relevant part:

> "Unless a defendant is sentenced to probation, drug court, or a pretrial diversion program, when a defendant is convicted of an offense that constitutes a Class C or D felony offense and receives a sentence of not more than 15 years, the judge presiding over the case shall order that the convicted defendant be confined in a prison, jail-type institution, treatment institution, or community corrections program for a Class C felony offense or in a consenting community corrections program for a Class D felony offense, except as provided in subsection (e), for a period not exceeding two years in cases where the imposed sentence is not more than 15 years, and that the execution of the remainder of the sentence be suspended notwithstanding any provision of the law to the contrary and that the defendant be placed on probation for a period not exceeding three years and upon such terms as the court deems best."

Sections "13A-5-6(a)(3) and 15-18-8(b), Ala. Code 1975, do not allow a trial court to impose a 'straight' sentence for a Class C felony when the Habitual Felony Offender Act does not apply." Jackson v. State, 317 So. 3d 1018, 1024-25 (Ala. Crim. App. 2020). In this case, Guice had no prior felony convictions and was not sentenced as a habitual offender. However, the trial court imposed a "straight" 10-year sentence for his conviction for shooting into an unoccupied vehicle, which is illegal under §§ 13A-5-6(a)(3) and 15-18-8(b).

Based on the foregoing, we affirm Guice's convictions for attempted murder, shooting into an occupied building, shooting into an occupied vehicle, and shooting into an unoccupied vehicle and his sentences for attempted murder, shooting into an occupied building, and shooting into an occupied vehicle. However, we must remand this case for the trial court to conduct another sentencing hearing, at which Guice is entitled to be present and represented by counsel, and to resentence Guice in compliance with §§ 13A-5-6(a)(3) and 15-18-8(b) for his conviction for shooting into an unoccupied vehicle. In resentencing Guice, the trial court should bear in mind that the 10-year base sentence originally imposed is legal and may not be changed. See Jackson, 317 So. 2d at 1025. Due return shall be filed within 42 days of the date of this opinion and shall include a transcript of the resentencing hearing and a copy of the trial court's amended sentencing order.

AFFIRMED IN PART; REMANDED WITH INSTRUCTIONS.

Windom, P.J., and McCool and Cole, JJ., concur. Minor, J., concurs specially, with opinion.

MINOR, Judge, concurring specially.

I concur fully in the Court's decision. I write separately to again urge the legislature to "consider amending § 13A-5-6(a)(3)[, Ala. Code 1975,] to no longer require that a sentence for a Class C felony conviction comply with § 15-18-8(b) if the defendant is to serve the sentence for that conviction concurrently with a lawfully imposed straight sentence." Reynolds v. State, 334 So. 3d 262, 277 (Ala. Crim. App. 2020) (Minor, J., concurring specially).

Christopher Jarquis Guice has concurrent sentences of 60 years, 20 years, and 20 years for his convictions for attempted murder, discharging a firearm into an occupied building, and discharging a firearm into an occupied vehicle. Even so, § 13A-5-6(a)(3), Ala. Code 1975, requires this Court to remand this case for the circuit court to suspend or split Guice's 10-year sentence for his conviction for discharging a firearm into an unoccupied vehicle. This Court's recent decisions include several cases similar to Guice's. See, e.g., Couch v. State, [Ms. CR-20-0322, February 11, 2022] ___ So. 3d ___ (Ala. Crim. App. 2022) (defendant serving other consecutive sentences of 99 years, 99 years, and 20 years); Wesson v. State, [Ms. CR-18-0790, December 16, 2020] ___ So. 3d ___ (Ala. Crim.

14

App. 2020) (opinion on application for rehearing on return to second remand) (defendant serving other consecutive sentence of 10 years); Reynolds, supra (defendant serving other sentence of 27 years); Born v. State, 331 So. 3d 626 (Ala. Crim. App. 2020) (defendant serving other sentences of 20 years and 20 years); Jackson v. State, 317 So. 3d 1018 (Ala. Crim. App. 2020) (defendant serving other sentence of 20 years). Remanding cases such as those, in my opinion, wastes scarce judicial resources as, at a minimum, each case has involved: (1) the cost of transporting the defendant to and from the prison for a new sentencing hearing; (2) the cost of counsel for the defendant; (3) the cost of transcribing the proceedings on remand and preparing a new record to submit to this Court; and (4) the issuance of a new written order from the circuit court; and (5) the issuance of a new written decision from this Court. These expenditures could be avoided in similar circumstances by a simple amendment to § 13A-5-6(a)(3).[3]

---

[3]Although not implicated in this case, the legislature also should "consider amending § 13A-5-6(a)(4), Ala. Code 1975, to no longer require that a sentence for a Class D felony conviction comply with § 15-18-8(b) if the defendant is to serve the sentence for that conviction concurrently with a lawfully imposed straight sentence." Reynolds, 334 So. 3d at 277 (Minor, J., concurring specially).

15