WELCH, Presiding Judge.
The appellant, Renard Marcel Daniel, currently an inmate at Holman Correctional Facility on Alabama’s Death Row, appeals the circuit court’s summary dismissal of his petition for postconviction relief filed pursuant to Rule 32, Ala. R.Crim. P.
In 2003, Daniel was convicted of capital murder for murdering Loretta McCulloch and John Brodie during one course of conduct or pursuant to one plan or scheme, see § 13A-5-40(a)(10), Ala.Code 1975. The jury recommended, by a vote of 10 to 2, that Daniel be sentenced to death. The circuit court followed the jury’s recommendation and sentenced Daniel to death. This Court affirmed Daniel’s conviction and death sentence on direct appeal. See Daniel v. State, 906 So.2d 991 (Ala.Crim.App.2004). We issued the certificate of judgment on February 18, 2005.
On February 14, 2006, Daniel filed a Rule 32 petition in the Jefferson Circuit Court attacking his conviction and death sentence. On July 31, 2006, the circuit court dismissed the petition. Daniel moved that the court reconsider its ruling. On August 30, 2006, the court vacated its July 31 order and allowed Daniel the opportunity to amend his petition.[1] Daniel filed his first amended petition in October 2006. On May 31, 2007, the circuit court held a status hearing on the merits of conducting a full evidentiary hearing. Daniel then filed a second amended petition in October 2007. On January 14, 2009, the circuit court dismissed Daniel’s postconviction petition. This appeal followed.
In its order sentencing Daniel to death, the circuit court set out the following facts surrounding the double homicide:
“The homicides which were the basis for the charge as set out in this indictment occurred on September 26, 2001, between the hours of 10:45 p.m. and 11:00 p.m. at the victim’s apartment located at Oporto Madrid Boulevard, Birmingham, Jefferson County, Alabama. The time of occurrence could only be estimated as one of the witnesses heard four (4) gunshots between 10:45 p.m. and 11:00 p.m. on September 26, 2001. The bodies were discovered the next morning on September 27, 2001, when the police responded to the scene of the homicides. It was determined that two (2) people had been murdered in an ‘execution-style killing’ in that both of the victims were lying on the floor with one (1) shot to the back of the head. Witness George Jackson testified for the State that on September 26, 2001, he was living at ... Oporto Madrid Boulevard, Birmingham, Alabama. John Bro-die and Loretta McCulloch lived next door to his apartment. On September 26, 2001, after he got off work he went to [Daniel’s] apartment where he and [Daniel] drank a couple of beers and smoked a joint. Eventually they went next door and introduced themselves to the victims. Both victims were drinking *410 and were very intoxicated. They began to play cards until victim John Brodie called [Daniel] his ‘Brother Nigger.’ [Daniel] became agitated and angry. The victim apologized and tried to calm [Daniel], Witness George Jackson tried to calm [Daniel] by explaining that the victim was drunk and didn’t mean anything by the remark. [Daniel] pulled a pistol and the victims asked [Daniel] to leave their apartment. Witness George Jackson walked out of the apartment first, followed by [Daniel]. [Daniel] stood at the doorway of the victims’ apartment and fired multiple shots at the victims. George Jackson then went into his apartment where he heard one of the victims say, ‘Are you all right’ and shortly after this, heard two more shots. The witness, due to his fear of [Daniel], remained in his apartment until the next day when he went to his mother and stepfather’s house and informed them of the events of the night before. They convinced him to go to the police. Based upon the information he provided to the Birmingham Police Department, a patrol car was sent to the victims’ residence where the bodies were discovered.
“Dr. Greg Davis of the Jefferson County Coroner’s Office performed the autopsy on each victim and determined that John Brodie died from a gunshot wound to the back of the head which contained stipling around the entrance wound. There were other gunshot wounds to victim John Brodie but they would not have caused death, assuming reasonable medical attention.
“Victim Loretta McCulloch died due to a contact gunshot to the head. She also had other wounds, but in Dr. Davis’s opinion, these would not have caused death, assuming reasonable medical attention.
“Witness Julie Farrow testified that she lived at Oporto Madrid Boulevard next door to the victims and [Daniel’s] apartment on September 26, 2001. On the evening of September 26, 2001, between 10:45 p.m. and 11:00 p.m. she was walking her dog when she heard four (4) gunshots. She heard two to three (2 or 3) shots and short time later heard one or two (1 or 2) more gunshots.
“Further testimony from the State presented evidence that a pair of tennis shoes removed from the trunk of [Daniel’s] automobile were consistent with the bloody shoe impression next to the victims’ bodies.
“Shell casings recovered from the front door and a dumpster were recovered where witness George Jackson testified he saw [Daniel] throw them. These shell casings were recovered by evidence technician Jay Logan of the Birmingham Police Department.”
(C. 13-15.)

Standard of Review

Rule 32.3, Ala. R.Crim. P., provides, in pertinent part: “The petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief.”
Unlike the general pleading requirements related to civil cases,[2] the pleading requirements for postconviction petitions *411 are more stringent and are set out in Rule 32.6(b), Ala. R.Crim. P. This rule states:
“The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.”
In Boyd v. State, 913 So.2d 1113 (Ala.Crim.App.2003), we stated:
“ ‘Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief.’ Boyd v. State, 746 So.2d 364, 406 (Ala.Crim.App.1999). In other words, it is not the pleading of a conclusion ‘which, if true, entitle[s] the petitioner to relief.’ Lancaster v. State, 638 So.2d 1370, 1373 (Ala.Crim.App.1993). It is the allegation of facts in pleading which, if true, entitle a petitioner to relief. Ater facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala. R.Crim. P., to present evidence proving those alleged facts.”
913 So.2d at 1125.
In Hyde v. State, 950 So.2d 344 (Ala.Crim.App.2006), and Bracknell v. State, 883 So.2d 724 (Ala.Crim.App.2003), we set out the requirements necessary to satisfy the full-fact pleading requirements of Rule 32.6(b),Ala. R.Crim. P.:
“The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one. Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). The full factual basis for the claim must be included in the petition itself. If, assuming every factual allegation in a Rule 32 petition to be true, a court cannot determine whether the petitioner is entitled to relief, the petitioner has not satisfied the burden of pleading under Rule 32.3 and Rule 32.6(b).”
950 So.2d at 356.
“[The petitioner] failed to include in his petition any facts tending to indicate how those acts or omissions prejudiced his defense. He did not include specific facts regarding the crimes or the evidence introduced at trial, and he did not even state in his petition what his defense was. Even accepting all of the allegations in his petition as true, we cannot say whether Bracknell is entitled to relief. Therefore, Bracknell has not provided ‘full disclosure of the factual basis’ of his claims necessary to satisfy the specificity requirements of Rule 32.6(b), Ala. R.Crim. P., and the pleading requirements of Rule 32.3, Ala. R.Crim. P. Accordingly, the circuit court properly denied his claims of ineffective assistance of trial counsel without an evidentiary hearing.”
Bracknell v. State, 883 So.2d at 728.
Rule 32.7(d), Ala. R.Crim. P., further provides:
“If the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings, the court may either dismiss the petition or grant leave to file an amended petition. Leave to amend shall be freely granted. Otherwise, the court shall direct that the proceedings continue and set a date for hearing.”
In Moore v. State, 502 So.2d 819 (Ala.1986), the Aabama Supreme Court stated:
“ ‘An evidentiary hearing on a coram nobis petition [now Rule 32 petition] is required only if the petition is ‘meritori *412 ous on its face.’ Ex parte Boatwright, 471 So.2d 1257 (Ala.1985). A petition is ‘meritorious on its face’ only if it contains a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the facts relied upon (as opposed to a general statement concerning the nature and effect of those facts) sufficient to show that the petitioner is entitled to relief if those facts are true. Ex parte Boatwright, supra; Ex parte Clisby, 501 So.2d 483 (Ala.1986).”
502 So.2d at 820.
More recently, in Bryant v. State, [Ms. CR-08-0405, February 4, 2011] - So.3d -(Ala.Crim.App.2011), we stated:
“[A] circuit court may, in some circumstances, summarily dismiss a postconviction petition based on the merits of the claims raised therein. Rule 32.7(d), Ala. R.Crim. P., provides:
“ ‘If the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings, the court may either dismiss the petition or grant leave to file an amended petition. Leave to amend shall be freely granted. Otherwise, the court shall direct that the proceedings continue and set a date for hearing.’
“ ‘ “Where a simple reading of the petition for post-conviction relief shows that, assuming every allegation of the petition to be true, it is obviously without merit or is precluded, the circuit court [may] summarily dismiss that petition.” ’ Bishop v. State, 608 So.2d 345, 347-48 (Ala.1992) (emphasis added) (quoting Bishop v. State, 592 So.2d 664, 667 (Ala.Crim.App.1991) (Bowen, J., dissenting)). See also Hodges v. State, [Ms. CR-04-1226, March 23, 2007] - So.3d -, - (Ala.Crim.App.2007) (a postconviction claim is ‘due to be summarily dismissed [when] it is meritless on its face’).
“Moreover, ‘a judge who presided over the trial or other proceeding and observed the conduct of the attorneys at the trial or other proceeding need not hold a hearing on the effectiveness of those attorneys based upon conduct that he observed.’ Ex parte Hill, 591 So.2d 462, 463 (Ala.1991).
“ ‘ “In some cases, recollection of the events at issue by the judge who presided at the original conviction may enable him summarily to dismiss a motion for postconviction relief.” Little v. State, 426 So.2d 527, 529 (Ala.Cr.App.1983). “If the circuit judge has personal knowledge of the actual facts underlying- the allegations in the petition, he may deny the petition without further proceedings so long as he states the reasons for the denial in a written order.” Sheats v. State, 556 So.2d 1094, 1095 (Ala.Cr.App.1989).’
“Ray v. State, 646 So.2d 161, 162 (Ala.Crim.App.1994) (quoting Norris v. State, 579 So.2d 34, 35 (Ala.Crim.App.1991) (Bowen, J., dissenting)).”
- So.3d at -. Last, “ ‘[w]hen reviewing a circuit court’s rulings made in a postconviction petition, we may affirm a ruling if it is correct for any reason.’ ” Lee v. State, 44 So.3d 1145, 1149 (Ala.Crim.App.2009), quoting Bush v. State, [Ms. CR-03-1902, May 29, 2009] — So.3d -, - (Ala.Crim.App.2009).
With these principles in mind, we review Daniel’s claims.
I.
Daniel first argues that the circuit court’s order is deficient because, he as *413 serts, the court failed to make specific findings of fact concerning each of his claims. Specifically, he argues that we must remand this case to the circuit court for that court to make written findings of fact concerning each issue he raised in his second amended postconviction petition.
No evidentiary hearing was held in this case — the circuit court summarily dismissed Daniel’s petition. “Because the trial court did not hold an evidentiary hearing, it was not required to make specific findings of facts as to each claim.” Beckworth v. State, [Ms. CR-07-0051, May 1, 2009] — So.3d -, - (Ala.Crim.App.2009). “[R]ule 32.9(d), Ala. R.Crim. P., requires findings of fact only if an eviden-tiary hearing is held. Findings are not required if the petition is dismissed.” Fowler v. State, 890 So.2d 1101, 1103 (Ala.Crim.App.2004). “Rule 32.9(d), Ala. R.Crim. P., requires the circuit court to make specific findings of fact only after an evidentiary hearing or the receipt of affidavits in lieu of a hearing.” Chambers v. State, 884 So.2d 15, 19 (Ala.Crim.App.2003). See also Ex parte McCall, 30 So.3d 400 (Ala.2008). The circuit court did not err in failing to make written findings of fact concerning Daniel’s claims.
II.
Daniel next argues that the circuit court erred in finding that his claims of ineffective assistance of counsel were procedurally barred because they could have been raised at trial but were not. This section of Daniel’s brief asserts no specific claim of ineffective assistance of counsel; therefore, it fails to comply with the requirements for the content of a brief set out in Rule 28, Ala. R.App. P. Rule 28(a)(10), Ala. R.App. P., provides that an argument section of a brief should contain “the contentions of the appellant/petitioner with respect the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on.” In Franklin v. State, 23 So.3d 694 (Ala.Crim.App.2008), we stated:
“It is well settled that ‘Mediation of allegations without citation to any legal authority and without adequate recitation of the facts relied upon has been deemed a waiver of the arguments fist-ed.’ Hamm v. State, 913 So.2d 460, 486 (Ala.Crim.App.2002). ‘An appellate court wifi consider only those issues properly delineated as such and wifi not search out errors which have not been properly preserved or assigned. This standard has been specifically applied to briefs containing general propositions devoid of delineation and support from authority or argument.’ Ex parte Riley, 464 So.2d 92, 94 (Ala.1985) (citations omitted).”
23 So.3d at 703.
The circuit court’s order dismissing Daniel’s petition states:
“This petition is due to be dismissed pursuant to Rule 32.2(a)(3) because it raises grounds that could have been, but were not, raised or addressed at trial. Likewise, the petition is due to be dismissed pursuant to Rule 32.2(a)(4) because it raises grounds that were raised or addressed by petitioner on direct appeal to the Court of Criminal Appeals. Furthermore, the petition is due to be dismissed under Rule 32.2(a)(5), because it raises grounds that could have been, but were not, raised on appeal. Additionally, to the extent that certain of petitioner’s claims fail to meet the specificity requirements of Rule 32.6(b), those claims are due to be dismissed.
“[Daniel] claims in this petition that his constitutional rights were violated in that (1) he was denied the effective assistance of counsel at trial; and (2) that *414 he was denied effective assistance of counsel on his appeal to the Court of Criminal Appeals. [Daniel’s] claims of ineffective appellate assistance hinge in large part on the merits of his claims of ineffective assistance at trial; appellate counsel cannot be ineffective for failing, on appeal, to challenge trial counsel’s ineffectiveness if trial counsel was not ineffective in the first place. Tolbert v. State, 733 So.2d 901, 903 (Ala.Crim.App.1997).
“This Court finds that [Daniel’s] allegations of ineffective assistance of counsel either do not meet the specificity requirements of Rule 32.6(b), raise grounds that were raised at trial in violation of Rule 32.2(a)(3), raise grounds that were raised by [Daniel] on direct appeal in violation of Rule 32.2(a)(4), raise grounds which could have been but were not raised on direct appeal in violation of Rule 32.2(a)(5), are without merit, or fail to state an issue of fact or law.
“[Daniel’s] claims fail procedurally, and fail to state a claim or demonstrate any material issue of law or fact that would entitle petitioner to relief; thus, this Court finds no necessity for an evi-dentiary hearing in this matter. Moreover, because this Court presided over the trial and [Daniel’s] post-trial motion hearings, under Alabama law the Court is not required to hold a hearing regarding the effectiveness of [Daniel’s] attorneys whose conduct the Court observed firsthand. Ex parte Hill, 591 So.2d 462, 463 (Ala.1991).
“Because [Daniel] has failed to present any meritorious claim that trial counsel was ineffective, this Court finds no grounds in the record or in this petition that demonstrate that [Daniel’s] claims of ineffective assistance are anything other than meritless. To the contrary, the opinion issued by the Court of Criminal Appeals demonstrates appellate counsel’s effectiveness. See Daniel v. State, 906 So.2d 991 (Ala.Crim.App.2004).”
(C. 54-56.)
The court stated alternative grounds for denying relief on Daniel’s claims of ineffective assistance of counsel.[3] “ ‘[W]hen reviewing a circuit court’s rulings made in a postconviction petition, we may affirm a ruling if it is correct for any reason.’ ” Lee v. State, 44 So.3d 1145, 1149 (Ala.Crim.App.2009), quoting Bush v. State, [Ms. CR-03-1902, May 29, 2009] — So.3d -, - (Ala.Crim.App.2009). For the reasons set out in this opinion, we affirm the circuit court’s dismissal of Daniel’s postconviction petition.
III.
Next, Daniel argues that the circuit court erred in dismissing his claims of ineffective assistance of counsel at the pleading stage. He asserts that all he was required to do at that stage was “to provide adequate notice of what he was alleging so that the State could understand and respond to his allegations.” (Daniel’s brief, p. 22.)[4]
*415 “A petitioner bears no burden of ‘proving’ his claims at the pleading stage.” Scott v. State, [Ms. CR-06-2233, March 26, 2010] — So.3d -, - (Ala.Crim.App.2010). However,
“The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one. Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). The full factual basis for the claim must be included in the petition itself. If, assuming every factual allegation in a Rule 32 petition to be true, a court cannot determine whether the petitioner is entitled to relief, the petitioner has not satisfied the burden of pleading under Rule 32.3 and Rule 32.6(b). See Bracknell v. State, 883 So.2d 724 (Ala.Crim.App.2003).”
Hyde, 950 So.2d at 356.
For a petitioner to establish a claim of ineffective assistance of counsel he must show: (1) that counsel’s performance was deficient; and (2) that he was prejudiced by the deficient performance. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
“Judicial scrutiny of counsel’s performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel’s assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-34, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ See Michel v. Louisiana, [350 U.S. 91], at 101 [(1955)]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.”
Strickland, 466 U.S. at 689 (citations omitted). As the United States Supreme Court further stated:
“[Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel’s judgments.”
Strickland, 466 U.S. at 690-91.
*416 The requirements for pleading claims of ineffective assistance of counsel were set out in Hyde:
“To sufficiently plead an allegation of ineffective assistance of counsel, a Rule 32 petitioner not only must ‘identify the [specific] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,’ Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), but also must plead specific facts indicating that he or she was prejudiced by the acts or omissions, i.e., facts indicating ‘that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ 466 U.S. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient.”
950 So.2d at 356. “[T]he claim of ineffective assistance of counsel is a general allegation that often consists of numerous specific subcategories. Each subcategory is an independent claim that must be sufficiently pleaded.” Coral v. State, 900 So.2d 1274, 1284 (Ala.Crim.App.2004), rev’d on other grounds, Ex parte Jenkins, 972 So.2d 159 (Ala.2005).
Daniel was represented at trial by attorneys Katheree Hughes and Danita Has-kins. New counsel was appointed to represent Daniels on his motion for a new trial and on direct appeal.
A.
First, Daniel argues that the circuit court erred in summarily dismissing his claim that his trial counsel was ineffective for failing to investigate the State’s case against him.
In his second amended postconviction petition, Daniel merely pleaded that his trial counsel was ineffective for failing to interview George Jackson — the State’s main witness. Daniel pleaded the following:
“Trial counsel did not interview any of the State’s witnesses before trial, including the State’s star witness, George Jackson. Counsel’s failing in this regard was patently unreasonable. The State’s case rested entirely on Mr. Jackson’s uncorroborated testimony, and trial counsel’s apparent trial strategy was to attempt to implicate Mr. Jackson in the shootings. There is simply no justification for trial counsel’s failure to actively investigate Mr. Jackson’s background, and seek all available information to discredit Mr. Jackson or his story (including information from Mr. Jackson himself), before trial. Mr. Daniel would not have been found guilty had Mr. Jackson’s credibility as a witness and as an innocent bystander been challenged.”
(C. 147.)
Assuming Daniel’s assertions are true, Daniel failed to plead what evidence counsel could have uncovered that would have discredited Jackson’s testimony or that Jackson would have even spoken to Daniel’s attorneys, given that Daniel’s entire defense was that Jackson, and not he, committed the double homicide.[5] Daniel failed to satisfy his burden of pleading full facts under Rule 32.3, Ala. R.Crim. P., and Rule 32.6(b), Ala. R.Crim. P. See Hyde, 950 So.2d at 356.
In this section of Daniel’s brief, he also argues that counsel was ineffective for failing to investigate the “findings of vari *417 ous police officers.” In his petition, Daniel merely pleaded the following: “Trial counsel also failed to adequately investigate the findings of the various police officers called as witnesses for the State by talking to those officers before they gave testimony against his client.” (C. 148.)
Daniel failed to identify, by name, any police officer whose findings counsel should have investigated. “[The petitioner] claimed that counsel was ineffective for failing to interview State witnesses. However, in this section of [the petitioner’s] amended petition he failed to identify one witness by name. Clearly, [the petitioner] failed to meet his burden of pleading in regard to this claim.” Lee, 44 So.3d at 1158. Likewise, Daniel failed to comply with the specificity requirements of Rule 32.6, Ala. R.Crim. P.
Moreover, as we stated in Robitaille v. State, 971 So.2d 43 (Ala.Crim.App.2005):
“ ‘[T]he failure to interview or take the depositions of the State’s witnesses for impeachment purposes is not prejudicial per se. See McCleskey v. Kemp, 753 F.2d 877, 900 (11th Cir.1985) (en banc) (holding no prejudice shown where attorney failed to interview two of State’s witnesses and potential defense witnesses); Boykins v. Wainwright, 737 F.2d 1539, 1543 (11th Cir.1984) (holding no prejudice shown where attorney failed to interview prosecution’s expert witnesses), cert, denied, [470] U.S. [1059], 105 S.Ct. 1775, 84 L.Ed.2d 834 (1985); Solomon v. Kemp, 735 F.2d 395, 402 (11th Cir.1984) (holding no prejudice shown where attorney failed to talk to all of the State’s witnesses and did not seek funds for an investigator), cert. denied, [469] U.S. [1181], 105 S.Ct. 940, 83 L.Ed.2d 952 (1985).'”
971 So.2d at 72, quoting Aldrich v. Wainwright, 777 F.2d 630, 636-37 (11th Cir.1985).
B.
Daniel next argues that counsel was ineffective for failing to meet with Daniel until a few days before his capital-murder trial.
In Daniel’s second amended petition he pleaded that his attorneys failed to answer his requests for a meeting and did not meet with him until three days before his trial began. In support of this contention Daniel attached to his petition copies of three letters he wrote to counsel. In the first letter, dated February 21, 2003, Daniel wrote: “Please read attached Alabama Rules of Conduct and request per me ASAP. Request you audit me in compliance with the requested materials ASAP. Mr. [Katheree] Hughes [Jr.], I further request you forward a copy of all enclosed to Ms. [Danita] Haskins, she also, representing me in this capital case. Considering the gross seriousness of the pending charge against me I hope and pray I hear from you in the very near future.” (C. 232.) The second letter, dated February 28, 2003, reads, in part:
“Be advised I have received a letter per Mr. Hughes that is totally unacceptable as to my previous letter of February 21, 2003, requesting the two of you please provide me with all copies of discovery evidence that you have received via the State of Alabama in regard to my criminal case pending in Jefferson County, Alabama.”[6]
The last letter, dated March 2, 2003, and addressed to the Alabama State Bar, requested two bar-complaint forms.
*418 Assuming Daniel’s assertions are true, in neither Daniel’s petition nor his exhibits did Daniel plead what evidence or help he could have provided to his attorneys or how he was prejudiced by their failure to consult with him in a more timely manner. Daniel failed to plead the full facts in support of this claim; therefore, it was properly dismissed pursuant to Rule 32.6, Ala. R.Crim. P.
Furthermore,
“ ‘We know of no case establishing a minimum number of meetings between counsel and client prior to trial necessary to prepare an attorney to provide effective assistance of counsel.’ United States ex rel. Kleba v. McGinnis, 796 F.2d 947, 954 (7th Cir.1986). ‘[B]revity of consultation time between a defendant and his counsel, alone, cannot support a claim of ineffective assistance of counsel. Jones v. Wainwright, 604 F.2d 414, 416 (5th Cir.1979).' Murray v. Maggio, 736 F.2d 279, 282 (5th Cir.1984).”
Davis v. State, 44 So.3d 1118, 1130 (Ala.Crim.App.2009).
C.
Daniel further argues that his trial counsel was ineffective for failing to conduct “meaningful interviews” with his family members and friends. He asserts that if counsel had had more “meaningful interviews” with his mother and sister, counsel would have discovered character evidence that should have been admitted at the guilt phase.
The State asserted the following in its motion to dismiss:
“Daniel does not state ... what specific information his mother and/or sister could have provided that would have been material or relevant to any guilt phase issues.
[[Image here]]
“Daniel was charged with intentionally murdering two people simply because one of them used a racial slur that Daniel, apparently, found offensive. Daniel does not explain to the Court how injecting the issue of his character into the guilt phase of his trial could have possibly made a difference in the outcome. In fact, if his trial counsels had offered character evidence in the guilt phase, it would have opened the door for the prosecution to introduce evidence that Daniel had been convicted of a crime involving violence and, possibly, other drug related felonies. There is no reasonable probability the outcome of the guilt phase would have been different if [counsel] had injected a trait of Daniel’s character.”
(C. 451-52.)
Initially, we note that Daniel failed to plead what specific character evidence should have been presented at the guilt phase or how he was prejudiced by counsel’s failure to present that evidence. This claim was correctly dismissed for its failure to comply with the full-fact pleading requirements of Rule 32.6(b), Ala. R.Crim. P.
Also, during a status hearing on the postconviction proceedings in May 2007, the circuit court questioned the advisability of introducing character evidence at the guilt phase. We agree. As Professor Gamble writes:
“One of the cardinal principles of the common law is that a person’s character, good or bad, offered for the purpose of showing his conduct on a specified occasion, is not provable by evidence of his specific acts or course of conduct. The policy behind the rule is that the reception of such evidence would result in an intolerable confusion of the issues.
*419 “The most commonly applied form of the above principle is found in the rule that the criminally accused may not prove his good character, as tending to show that he did not commit the crime in question, by showing prior specific good acts. It is, of course, the right of the accused to introduce his good character but only by means of general reputation. Once the accused introduces evidence of his good character, the door is opened for the prosecution to rebut with proof of his bad character. However, the prosecution may not prove the accused’s bad character by showing prior specific acts. The prosecution, like the accused, is relegated to proving character via general reputation.
“The present principle is one that has been termed the ‘general exclusionary rule of character.’ Collateral acts of a litigant are generally inadmissible when offered to prove that the litigant was of a particular character and acted consistent therewith on the occasion in question.”
C. Gamble, McElroy’s Alabama Evidence § 26.01(4) (6th ed.2009). “ ‘Whether to introduce character evidence and potentially open the door for impeachment is clearly one of tactics and strategy.’ ” Smith v. State, 288 Ga. 348, 354, 703 S.E.2d 629, 636 (2010), quoting Washington v. State, 276 Ga. 655, 659, 581 S.E.2d 518 (2003). Daniel had an extensive criminal record. If counsel had presented character evidence at the guilt phase, the State would have had the opportunity to rebut that evidence with proof of Daniel’s bad character.[7] There was no material issue of fact or law that would have entitled Daniel to relief; therefore, this claim was correctly dismissed. See Rule 32.7(d), Ala. R.Crim. P.
D.
Daniel next asserts that his counsel was ineffective for failing to interview certain potential defense witnesses. “ ‘[T]he failure to interview or take the depositions of the State’s witnesses for impeachment purposes is not prejudicial per se.’ ” Robitaille, 971 So.2d at 72, quoting Aldrich v. Wainwright, 777 F.2d 630, 636-37 (11th Cir.1985).
Daniel specifically questions counsel’s failure to interview the following potential witnesses:
Donald Bass. Counsel, he says, was ineffective for failing to interview Donald Bass because Bass could have testified that Jackson had a gun on the night of the murders and that he aimed the gun at the victims. The record of Daniel’s trial shows that counsel called Bass as a defense witness.[8] Bass testified that he had seen Jackson with a gun before the murders. There was no material issue of fact or law that entitled Daniel to relief in regard to this claim. See Rule 32.7(d), Ala. R.Crim. P.
Brenda King and Haywood King. Counsel should have interviewed Jackson’s parents, the Kings, because he says, they had information that would have assisted counsel in cross-examining Jackson. Daniel pleaded the following:
“According to information in trial counsel’s possession, Brenda King, Mr. *420 Jackson’s mother, and Haywood King, Mr. Jackson’s stepfather, were instrumental in causing Mr. Jackson to report the murders to the police the day after they occurred, and implicate Mr. Daniel in the crime. Because the Kings saw and spoke to Mr. Jackson shortly after the murders and before Mr. Jackson contacted the police, the failure of trial counsel to attempt to obtain any information from them concerning Mr. Jackson’s state of mind, what clothes he was wearing, whether his clothes were blood stained, the statement he made before they convinced him to go to the police, their knowledge of the incident, or what Mr. Jackson told them about his and Mr. Daniel’s role in the shootings constituted ineffective assistance. At the very least, this information would have assisted trial counsel in conducting a meaningful cross-examination of Mr. Jackson.”
(C. 148-49.)
First, Daniel failed to plead that the Kings would have been willing to talk with Daniel’s attorneys, given that Daniel’s defense was that their son committed the murders. Nor did Daniel plead how he was prejudiced by counsel’s failure to speak with the Kings. Daniel failed to meet the specificity requirements of Rule 32.6, Ala. R.Crim. P.
Moreover, the only information Daniel pleaded counsel failed to obtain was that the Kings convinced Jackson to go to police and that the police paid for Jackson to stay in a hotel after he reported the murders. The record shows that testimony was presented that the Kings convinced Jackson to go the police. In fact, the circuit court in its sentencing order stated that the Kings convinced their son, Jackson, to go to the police about the double homicide. Also, Daniel called Sgt. Cynthia Echols of the Birmingham Police Department as a defense witness. She testified that Jackson was afraid and that he asked the police to protect him from Daniel. The record shows that counsel’s cross-examination of Jackson was extensive. Counsel thoroughly cross-examined him about inconsistencies in his trial testimony and his statement to police and why he did not report the murders until the next day. There was no material issue or fact or law that would have entitled Daniel to relief on this claim. See Rule 32.7(d), Ala. R.Crim. P.
Ashley Contorno. Counsel should have interviewed Contorno because, he says, Jackson lived with her after the shootings and could have testified that
“Jackson had a short temper and had often bragged to her that he was a member of a gang. He left South Carolina not simply because his ‘[h]ome scene was just rough’, but because his family members caught him stealing to support his drug habit. Ms. Contorno also stated that she believed Jackson had a juvenile record.”
(C. 150.)
In its motion to dismiss, the State correctly asserted the following:
“None of the ‘information’ listed above would have been admissible to impeach Jackson’s trial testimony. Testimony that Jackson had a temper or that he had stolen from members of his family would be excluded under Rule 608, Ala. R. Evid. Further, any testimony that Jackson said he was a gang member or that he had a juvenile record would not have been admissible for impeachment. See Rules 608(a) and 609(d), Ala. R. Evid. Daniel cannot demonstrate that his trial counsels’ performance was deficient for failing to present inadmissible evidence.”
(C. 457-58.)
The evidence cited above that Daniel asserts counsel was ineffective for *421 failing to present was not admissible at the guilt phase. Rule 608(a), Ala. R. Evid., provides:
“(a) Opinion and Reputation Evidence of Character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.”
Rule 609(d), Ala. R. Evid., states: “Evidence of juvenile or youthful offender adjudication is not admissible under this rule.” See also Ex parte Thomas, 625 So.2d 1156 (Ala.1993) (admissible of evidence that defendant was member of gang was reversible error). “ ‘Counsel will not be deemed ineffective for failing to present inadmissible evidence.’ ” Kuehne v. State, 107 S.W.3d 285, 294 (Mo.App. W.D.2003), quoting Barnum v. State, 52 S.W.3d 604, 608 (Mo.App. W.D.2001).
Daniel further pleaded in his Rule 32 petition that Contorno could have testified that Jackson “went back into the victims’ apartment and removed evidence of his presence from the crime scene.” (C. 150.) Jackson testified at Daniel’s trial that he did not go back into the apartment; therefore, Contorno’s alleged statement was inconsistent with Jackson’s trial testimony. Daniel failed to plead how Contorno’s otherwise inadmissible statement would have been admissible to impeach Jackson’s testimony or what Jackson removed or changed at the crime scene. Daniel failed to plead the full facts to support this claim; therefore, he failed to comply with Rule 32.6, Ala. R.Crim. P.
Tim Swift. Counsel, he says, should have interviewed Swift, a clerk at a convenience store where Daniel purchased beer on the day of the murders. Daniel pleaded the following in regard to this witness:
“Tim Swift was identified in the State’s pretrial disclosures as the clerk at the Accumart who sold beer to Mr. Daniel and Mr. Jackson before the two men went to the victims’ apartment. At the very least, Mr. Swift could have provided information about the behavior of Messrs. Jackson and Daniel in the hours before the crime, including whether Mr. Jackson appeared intoxicated or agitated.”
(C. 151.)
Daniel failed to plead that he had spoken to Swift or that Swift was in possession of any information, much less favorable information, concerning Daniel or Jackson. Daniel pleaded conclusions without any specific factual support; therefore, he failed to comply with the full-fact pleading requirements of Rule 32.6(b), Ala. R.Crim. P.
K.V. Hill. Daniel asserted that Hill could have provided information that was essential for the effective cross-examination of Jackson. Specifically, he asserts that Hill could have informed counsel that illegal drugs were found in Jackson’s apartment after the murder, that Hill thought Jackson was involved in the murders, and that the police did not search Daniel’s vehicle until six days after the shootings.
The State asserted the following in its motion to dismiss:
“Daniel appears to ignore the fact that Hill testified at trial that he did not notice anything different about Daniel when he saw him the night of the murders. Also, Jackson testified at trial that Hill threw him out of his apartment the day after the murders because Hill *422 thought that Jackson was involved. As far as Daniel’s car is concerned, testimony at trial from other witnesses, proved that the Birmingham Police Department did not immediately seize Daniel’s car. The record showed that Daniel’s car was seized on October 1, 2001, about four days after the murders, and that it was not searched until October 4, 2001.”
(C. 460-61.)
The record supports the State’s assertions. Hill testified that Daniel worked for Hill’s son part-time at the time of the murders cleaning and painting apartments in the complex where the murders occurred. He said that on the night of the murders, Daniel called him and asked for an advance because, he said, he had no food. Hill further testified that Daniel came to his house sometime between 10:30 p.m. and 11:80 p.m. that evening. The following then occurred:
“[Prosecutor]: When he got there, did you notice anything different about his temperament, his facial — or the way he acted, his characteristics?
“[Hill]: No.”
(Trial record, p. 310.) Also, Jackson testified on cross-examination that: “K.V. Hill said I had something to do with it and he wouldn’t rent to me.” (Trial record, p. 262.) Police testimony also established that Daniel’s vehicle was not seized until four days after the murders. The alleged omitted evidence was introduced at Daniel’s trial. “An allegation that is refuted by the record fails to state a claim and does not establish that a material issue of fact or law exists as required by Rule 32.7(d).” Beckworth, — So.3d at -.
Daniel’s coworkers. In regard to this claim, Daniel pleaded the following:
“In addition to these witnesses, trial counsel could and should have made efforts to interview Mr. Jackson’s coworkers to determine whether any of them had ever seen Mr. Jackson wearing the sneakers that contained the victim’s blood. However, trial counsel never even attempted to contact these individuals, much less put them on the stand.”
(C. 153.)
Daniel failed to identify, by name, any coworker whom counsel should have consulted. Specificity in pleading requires that the petitioner state both the name and the evidence that was in the witness’s possession that counsel should have discovered, but for counsel’s ineffectiveness. Daniel failed to meet the specificity requirements of Rule 32.6, Ala. R.Crim. P.
E.
Daniel next argues that counsel was ineffective for failing to review the State’s evidence. Specifically, he asserts that counsel should have reviewed State’s Exhibits 10 and 11 — photographs of shoe prints found at the murder scene — and been prepared to object to their admission.
Daniel pleaded the following:
“State’s exhibits 10 and 11 are photographs of the footprints found at the scene of the crime. On each, the notation ‘matches defendant’s shoe’ is written. Introduction of this evidence without objection was highly prejudicial to Mr. Daniel. At trial, the testimony of Mr. Jackson was the State’s only evidence that the shoes in the trunk of Mr. Daniel’s car belonged to Mr. Daniel and were on his feet on the evening of September 26, 2001. In fact, the report prepared by John M. Case of the Alabama Department of Forensic Sciences explicitly states that, while corresponding in size and shape to the footprints at the crime scene, there was ‘[finsufficient clarity of the [shoe] impressions and lack of observable wear and random charac *423 teristics precluded a more definite determination.’ Thus, the State did not and could not establish that those shoes actually made the footprints found at the crime scene. Accordingly, the notation ‘matches defendant’s shoes’ was without any basis in fact, was highly prejudicial to Mr. Daniel and never should have been seen by the jury.
“Had trial counsel reviewed the State’s evidence before the trial, they also would have been better equipped to examine the witnesses with respect to the State’s physical evidence. Their failure to do so also constitutes ineffective assistance.”
(C. 154-55.)
The record shows that counsel did make several objections to the photographs. Counsel first objected when the photographs were introduced by the prosecutor in bulk. The circuit court sustained that objection and informed the prosecutor that he would have to go through each photograph and specifically identify each one. (Trial record, p. 338-39.) Counsel also objected and argued that the prosecutor failed to prove a proper foundation for the admission of the photographs. This objection was overruled. (Trial record, p. 345.) Jay Logan, a State evidence technician, testified that the shoes recovered from Daniel’s car could not be ruled out as a source of the shoe prints recovered at the murder scene. On cross-examination, Logan admitted that he could not conclusively say whether the shoes recovered from Daniel’s car were the source of the shoe prints at the murder scene. Also, the most damaging evidence concerning the shoes was not the shoe prints found at the murder scene but the facts that the shoes recovered from Daniel’s car had blood on them that matched the victims’ blood and were the same size as shoes seized from Daniel’s apartment. Jackson had testified that he owned one pair of shoes and that he was wearing those shoes when he talked to the police.
Daniel failed to plead what objection counsel could have made that would have resulted in the shoe prints being excluded. In fact, at the status hearing on the postconviction petition the circuit court stated that it believed that the shoe prints were admissible and that it would not have excluded them at trial. “[T]rial counsel is not ineffective for having an objection overruled or a motion denied.” Boyd v. State, 746 So.2d 364, 402 (Ala.Crim.App.1999).
Also, as to Daniel’s claim that counsel was ineffective for failing to object to the written note on each photograph that said: “matches defendant’s shoe”; Daniel failed to meet his burden of pleading sufficient facts in regard to this claim. He failed to plead what objection could have been made to that evidence. Thus, this claim was correctly dismissed according to Rule 32.6(b), Ala. R.Crim. P.
F.
Daniel next argues that he sufficiently pleaded his claim that counsel was ineffective for failing to retain the services of various experts.
“[T]he mere fact a defendant can find, years after the fact, a mental health expert who will testify favorably for him does not demonstrate that trial counsel was ineffective for failing to produce that expert at trial. See, e.g., Horsley v. Alabama, 45 F.3d 1486, 1495 (11th Cir.1995) (‘That experts were found who would testify favorably years later is irrelevant.’); Elledge v. Dugger, 823 F.2d 1439 (11th Cir.1987).”
Davis v. Singletary, 119 F.3d 1471, 1475 (11th Cir.1997).
*424 Daniel challenges counsel’s failure to hire the following experts:
Mental-health expert. Daniel asserts that counsel was ineffective for failing to present the testimony of a mental-health expert who would testify during the guilt phase that the reason Daniel did not implicate Jackson as the shooter was that he had been conditioned from an early age to remain silent when he witnessed criminal activity. In his amended Rule 32 petition, Daniel asserted that counsel should have presented the testimony of Martha Loring, a licensed certified social worker.
The State asserted the following in its motion to dismiss:
“[E]ven if Daniel could somehow demonstrate that [Martha] Loring was available in March 2003, Daniel does not state in his second amended Rule 32 petition under what legal theory Lor-ing’s testimony would have been admissible during the guilt phase of his trial. According to her curriculum vita[e], Loring is a sociologist, not a psychologist or psychiatrist. Daniel fails to demonstrate Loring would have been qualified to testify during the guilt phase of trial about her subjective opinions about what effect Daniel’s childhood had on him in his later years.”
(C. 467.)
We agree with the State. Daniel failed to plead on what legal basis a sociologist’s testimony would have been admissible at the guilt phase of Daniel’s trial to explain Daniel’s state of mind as to why he failed to inform the police about Jackson’s involvement in the murders. In fact in Gaddy v. State, 952 So.2d 1149, 1163 (Ala.Crim.App.2006), we affirmed a circuit court’s ruling that similar testimony would have been admissible only to support a claim of not guilty by mental disease or defect.
Moreover, at trial Daniel testified that the reason he did not tell the police that Jackson was involved in the homicides was that he promised Jackson he would not tell. Counsel is not ineffective for failing to secure the services of an expert whose testimony would have been inconsistent with the “defendant’s own version of events.” Skrandel v. State, 830 So.2d 109, 113 (Fla.Dist.Ct.App.2002).
Not only did Daniel fail to satisfy the pleading requirements of Rule 32.6, Ala. R.Crim. P., but also there was no material issue or fact or law that would entitle him to relief in regard to this claim.
Police-procedures expert. Daniel pleaded in his second amended Rule 32 petition that counsel was ineffective for failing to present the testimony of a police expert to the effect that-the police investigation of the case was not consistent with accepted police practices. He specifically asserted that W. Kenneth Katsaris, a retired law-enforcement officer in Florida, was prepared to testify concerning the defects in the police investigation of the double homicide.
Initially, Daniel failed to plead that the Florida expert was familiar with Alabama police practices and that he was available to testify in Alabama in 2003. Daniel failed to plead the full facts in support of this claim. See Rule 32.6(b), Ala. R.Crim. P.
Moreover, in the State’s answer to Daniel’s amended Rule 32 petition, it asserted:
“Under the particular facts of Daniel’s case, there is no reasonable probability an expert in police procedures would have benefitted the defense. Daniel’s trial counsel vigorously attacked the State’s investigation of this case. During his cross-examination of Jay Logan, the lead evidence technician in the case, Mr. [Katheree] Hughes proved that no *425 evidence was taken from Jackson’s apartment and that Logan never considered Jackson as a suspect in the murder. Hughes also questioned Logan extensively about the search of Daniel’s car. Logan also conceded on cross-examination that Jackson’s apartment was never tested for blood and that McCul-loch’s purse was not seized or otherwise processed for evidence. In fact, Logan admitted that McCulloch’s purse was returned to her family. Trial counsel established that Daniel’s car [was] left unattended from the time of the murders until October 1, 2001, when it was seized by law enforcement. Further, Hughes argued during his guilt phase closing to the jury that the focus of investigation was on Daniel because he had priors for selling drugs. Hughes vigorously argued during his guilt phase closing that the State’s investigation was conducted to conform to Jackson’s version of events. Hughes and [Danita] Haskins also showed that the State did not pursue a witness that testified Jackson possessed a gun weeks before the murders.
“Daniel cannot demonstrate he was prejudiced because Mr. Hughes and Ms. Haskins did not request funds for an ‘expert’ in police procedures to attack the Birmingham Police Department’s investigation of this case because they were able to do the same thing without one.”
(C. 473-74.)
Our review of the record reflects that in Daniel’s case-in-chief, counsel also called Sgt. Cynthia Echols of the Birmingham Police Department to testify. Sgt. Echols testified that at the time of the murder she was a homicide detective and that she was the lead homicide detective on Daniel’s case. Counsel questioned Sgt. Echols about the investigation. Counsel used every opportunity to attack the police investigation and conducted a thorough cross-examination of the State’s forensic expert.
This claim presented no material issue of fact or law that would have entitled Daniel to relief. See Rule 32.7, Ala. R.Crim. P.
Forensic and DNA experts. Daniel asserts that counsel should have retained the services of a forensic expert to counter the State’s forensic expert and a DNA expert. In regard to these claims, Daniel pleaded the following:
“Trial counsel could and should have asked for funds to procure the assistance of a forensic expert. At trial, the State introduced the testimony of its own forensic expert to establish that Mr. Daniel was present at the crime scene on the day in question even though Mr. Daniel never denied that he was present in the victim’s apartment on that night. However, it is clear that the State found some value to establishing Mr. Daniel’s presence through forensic evidence. Whatever value there was to the State, there was equal value to Mr. Daniel in terms of showing Mr. Jackson’s presence there as well.
[[Image here]]
“A DNA expert could have tested the shoes for hair samples and skin fragments and may well have been able to give testimony that the bloody shoes were worn by Mr. Jackson. Such information would have proven invaluable in terms of impeaching Mr. Jackson’s testimony and undermining his credibility. Trial counsel’s failure to procure a DNA expert was extremely prejudicial, as it may no longer be possible to conduct reliable testing on the sneakers today.”
(C. 170-71.) Daniel failed to identify, by name, any forensic or DNA expert who could have testified at Daniel’s trial or the *426 content of the expert’s expected testimony. Accordingly, Daniel failed to comply with the full-fact pleading requirements of Rule 32.6, Ala. R.Crim. P. See McNabb v. State, 991 So.2d 313 (Ala.Crim.App.2007) (claim that counsel was ineffective for failing to retain an expert not sufficiently pleaded because expert was not identified); Woods v. State, 957 So.2d 492 (Ala.Crim.App.2004), rev’d on other grounds, 957 So.2d 533 (Ala.2006) (claim of ineffective assistance of counsel not sufficiently pleaded because Woods failed to identify an expert by name).
Also,
“[H]ow to deal with the presentation of an expert witness by the opposing side, including whether to present counter expert testimony, to rely upon cross-examination, to forgo cross-examination and/or to forgo development of certain expert opinion, is a matter of trial strategy which, if reasonable, cannot be the basis for a successful ineffective assistance of counsel claim.”
Thomas v. State, 284 Ga. 647, 650, 670 S.E.2d 421 (2008).
G.
Daniel next argues that counsel was ineffective for failing to question prospective juror E.C.[9] after she indicated during voir dire examination that she or a family member had been the victim of a rape.
The record of Daniel’s trial shows that immediately after juror E.C. indicated that she or a family member had been the victim of a rape, the prosecutor asked: “Let me ask you specifically before we go over here. The fact that either you or a family member has been a victim of a crime, would that affect you — would that cause you to have more sympathy in this case, or some sympathy in this case, about the victims in this case, in such a way it will affect the way you decide this case?” (Trial record, p. 80-81.) E.C. did not respond. Several moments later the prosecutor asked: “Is there anything about this case, other than the capital issue that the Judge is going to privately speak to you about, is there anything about this case that creates a doubt in anybody’s mind that you cannot sit fairly and judge this case impartially?” (Trial record, p. 95-96.) Again E.C. did not respond. Though counsel did not ask the question of the prospective juror, the juror was asked about whether she could be impartial in this case.
As we stated in Lee v. State:
“ ‘The Fifth Circuit Court of Appeals considers an attorney’s actions during voir dire to be a matter of trial strategy, which “cannot be the basis for a claim of ineffective assistance of counsel unless counsel’s tactics are shown to be ‘so ill chosen that it permeates that entire trial with obvious unfairness.’” Teague v. Scott, 60 F.3d 1167, 1172 (5th Cir.1995) (quoting Garland v. Maggio, 717 F.2d 199, 206 (5th Cir.1983)). Federal courts have held that an attorney’s failure to exercise peremptory challenges does not give rise to a claim of ineffective assistance of counsel absent a showing that the defendant was prejudiced by the counsel’s failure to exercise the challenges. United States v. Taylor, 832 F.2d 1187 (10th Cir.1987). See also Mattheson v. King, 751 F.2d 1432, 1438 (5th Cir.1985).’”
44 So.3d at 1164-65, quoting Le v. State, 913 So.2d 913, 954 (Miss.2005). There was no material issue of fact or law that would have entitled Daniel to relief on this claim. See Rule 32.7(d), Ala. R.Crim. P. Also, *427 Daniel failed to plead that E.C. was impartial; therefore, he failed to comply with the pleading requirements of Rule 32.6(b), Ala. R.Crim. P.
H.
Daniel next argues that counsel was ineffective for failing to argue that Jackson’s testimony was not adequately corroborated according to § 12-21-222, Ala.Code 1975, because, he asserts, Jackson was an accomplice in the murders.
In our opinion on direct appeal we stated the following:
“Based on the evidence presented, we agree with the trial court’s finding that Jackson was not an accomplice. As the trial court indicated, the only testimony regarding any potential involvement by Jackson came from [Daniel], who testified that Jackson was solely responsible for the murders. Therefore, the trial court correctly found, as a matter of law, that Jackson was not an accomplice. Accordingly, the State was not required to corroborate Jackson’s testimony.
“Moreover, the State presented sufficient evidence to corroborate Jackson’s testimony. Specifically, evidence regarding the location of the victim’s bodies; Farrow’s testimony about the number and timing of gunshots; evidence that blood that matched McCulloch’s blood profile was on a tennis shoe that officers recovered from the trunk of a vehicle the appellant had had towed to the apartments; evidence that the tennis shoe was the same size as other shoes officers recovered from the appellant’s apartment; evidence that there were two shoe impressions in the victims’ apartment that were consistent with that tennis shoe; evidence regarding the number and locations of shell casings and projectiles; evidence that all of the shell casings and projectiles were fired from the same handgun; and evidence that the handgun used was probably a .380 semiautomatic corroborated Jackson’s testimony. Therefore, the appellant’s argument is without merit.”
Daniel, 906 So.2d at 1001.
This Court specifically held that Jackson was not an accomplice. Thus, the substantive issue underlying the claim of ineffective assistance of counsel has no merit. “Because the substantive claim underlying the claim of ineffective assistance of counsel has no merit, counsel could not be ineffective for failing to raise this issue.” Lee v. State, 44 So.3d at 1173. See also Nicks v. State, 783 So.2d 895 (Ala.Crim.App.1999); Simmons v. State, 797 So.2d 1134 (Ala.Crim.App.1999); Magwood v. State, 689 So.2d 959 (Ala.Crim.App.1996).
I.
Daniel argues that counsel was ineffective for failing to impeach Jackson with his audiotaped statement to police. Daniel pleaded the following in his amended Rule 32 petition:
“The changes in Mr. Jackson’s story between his initial interview with the police and his testimony at trial are significant and should have been exposed through the introduction of his audio-taped statement at trial. Hearing Mr. Jackson contradict the statement he made in open court as opposed to hearing trial counsel question him about statements he made to the police on the basis of incomplete notes would have had a significant impact on Mr. Jackson’s credibility in the eyes of the jury.”
(C. 176.)
Our review of the record shows that Daniel’s counsel had the audiotape of Jackson’s interview transcribed and impeached Jackson with the discrepancies in his statement to police and his trial testimony. Counsel also called Sgt. Echols during the *428 defense ease-in-chief and questioned her regarding the inconsistencies in Jackson’s trial testimony and his statement to police. Trial counsel then presented the testimony of Donald Bass, who testified that he had seen Jackson with a gun several weeks before the murders — testimony that contradicted Jackson’s testimony that Jackson did not own a gun. Counsel utilized many resources to impeach Jackson’s testimony.
“Generally, failure to impeach a witness does not amount to ineffective assistance of counsel; See Commonwealth v. Bart B., 424 Mass. 911, 916, 679 N.E.2d 531 (1997), and eases cited. Even on the more favorable standard of review under § 33E [M.G.L.A. 278 § 33E, entitled ‘Capital cases; review by supreme judicial court’], a claim of ineffective assistance based on failure to use particular impeachment methods is difficult to establish. Impeachment of a witness is, by its very nature, fraught with a host of strategic considerations, to which we will, even on § 33E review, still show deference. Furthermore, absent counsel’s failure to pursue some obviously powerful form of impeachment available at trial, it is speculative to conclude that a different approach to impeachment would likely have affected the jury’s conclusion.”
Commonwealth v. Fisher, 433 Mass. 340, 356, 742 N.E.2d 61, 74-75 (2001). That counsel used the printed transcript of Jackson’s interview instead of the audio-taped version did not render counsel’s performance ineffective. Relief was correctly denied on this claim because there was no material issue of fact or law that would entitle Daniel to relief. See Rule 32.7, Ala. R.Crim. P.
IV.
Next, Daniel argues that his counsel was ineffective during the penalty phase of his capital-murder trial.
The record of Daniel’s trial shows that at the penalty phase before the jury, counsel presented the testimony of Daniel’s mother, Carolyn Daniel. She testified that Daniel had had problems in school and had been diagnosed with attention deficit/hyperactivity disorder (“ADHD”) and dyslexia and that he dropped out of high school in the 10th grade. Carolyn Daniel also testified that after she remarried and when Daniel was 12 years old she learned that her husband was abusing Daniel, that Daniel approached her after his stepfather beat him, that he was covered in bruises and marks, that she took him to the hospital, that he had to have a kidney removed as a result of the beating, and that her children — Daniel and his two sisters— were removed from her care by the Department of Human Resources. She further testified that Daniel remained in foster care for about 10 months and that when he was returned to her he was withdrawn. At around age 16, she said, he started drinking beer and using drugs. Last, Carolyn Daniel pleaded that the jury sentence her son to life imprisonment without the possibility of parole and not death. At the sentencing hearing before the court, Carolyn Daniel and Tammi Daniel, Daniel’s older sister, both asked the court to spare" Daniel’s life.
A.
First, • Daniel asserts that his counsel admitted on the record that he was unprepared for the penalty phase.
This claim was not supported by the record. The record shows that the following discussion took place after the guilt phase:
“[Defense counsel]: My preference, Judge, would be to in order to ■ get enough time to go through all the information we need to go through is to start *429 first thing in the morning as opposed to this afternoon.
“The Court: It’s only 2:15. I’m not going to do that. We are going to have to go on this afternoon and proceed on.
“[Defense counsel]: Well, can we get about 35 or 40 minutes before that?
“The Court: I will give you about 30 minutes.... ”
(Trial record, p. 885.)
Defense counsel did not state that he was not prepared to go forward with the penalty phase. Daniel’s claim is not supported by the record. “An allegation that is refuted by the record fails to state a claim and does not establish that a material issue of fact or law exists as required by Rule 32.7(d).” Beckworth, — So.3d at —.
B.
Daniel asserts that his trial counsel was ineffective for failing to present evidence concerning the death of his biological father. In his second amended petition, Daniel asserted that he was present when his mother shot his father when he was three years old and that counsel should have presented this testimony.
The State, in responding to this claim, asserted the following:
“Daniel does not explain to the Court ... why the circumstances of his father’s death, whether discovered by Daniel at age 20 or having witnessed it or being present at age three, would have been mitigating.[10] Daniel was almost 26 years old when he murdered the victims. There is simply no reasonable probability that the facts surrounding his father’s death would have been mitigating. See Mills v. Singletary, 63 F.3d 999, 1025 (11th Cir.1995) (holding that ‘evidence of Mills’ childhood environment likely would have carried little weight in light of the fact that Mills was twenty-six when he committed the crime.’).”
(C. 491-92.)
Daniel failed to plead how he was prejudiced by counsel’s failure to present evidence concerning the facts surrounding his biological father’s murder. He failed to comply with the pleading requirements of Rule 32.6(b), Ala. R.Crim. P. See Hyde, 950 So.2d at 356. As we stated in Beckworth:
“Beckworth failed to allege specific facts indicating how he was ‘impacted’ by his daughter’s alleged sexual abuse; he failed to allege any specific acts or omissions of counsel related to the alleged failure to present this evidence; and he failed to allege how any alleged impact was relevant as a mitigating circumstance in the crime he committed.... ”
— So.3d at -.
C.
Daniel argues that counsel was ineffective for failing to present evidence that he had been abused by his stepfather.
As stated above, counsel presented the testimony of Daniel’s mother at the penalty phase. His mother testified that Daniel was physically abused by his stepfather and that one beating was so severe a kidney was damaged and had to be removed. Also, the circuit court found as nonstatuto-ry mitigating evidence that Daniel had suffered severe abuse at the hands of his stepfather, that as a result of that abuse his stepfather ruptured one of his kidneys, and that Daniel had had surgery to remove the damaged kidney.
‘“[T]he failure to present additional mitigating evidence that is merely *430 cumulative of that already presented does not rise to the level of a constitutional violation.’ Nields v. Bradshaw, 482 F.3d 442, 454 (6th Cir.2007) (quoting Broom v. Mitchell, 441 F.3d 392, 410 (6th Cir.2006)).” Eley v. Bagley, 604 F.3d 958, 968 (6th Cir.2010). “This Court has previously refused to allow the omission of cumulative testimony to amount to ineffective assistance of counsel.” United States v. Harris, 408 F.3d 186, 191 (5th Cir.2005). “Although as an afterthought this [defendant’s father] provided a more detailed account with regard to the abuse, this Court has held that even if alternate witnesses could provide more detailed testimony, trial counsel is not ineffective for failing to present cumulative evidence.” Darling v. State, 966 So.2d 366, 377 (Fla.2007).
Daniel also pleaded that counsel was ineffective for failing to present evidence that he had been sexually abused by his stepfather. Daniel pleaded the following:
“During the initial meeting between Mr. Daniel’s family and his current counsel, Mrs. Daniel volunteered information concerning Mr. Western’s [Daniel’s stepfather’s] sexual abuse of her children. Mrs. Daniel explained that, long after Mr. Western had ceased terrorizing the Daniel family she received a call from her oldest daughter, Tiauna, who was then an adult living in Atlanta. During their conversation, Tiauna told her mother that Mr. Western molested her and threatened that if she or her siblings ever told, Social Services would take them away. After Mrs. Daniel relayed this event, Mr. Daniel’s sister Tammi confirmed that she had witnessed Mr. Western sexually abuse her brother and volunteered that he also forced the three Daniel children to engage in sexual acts with each other, threatening to kill Mrs. Daniel if any of them told.”
(C. 188; emphasis added.) The emphasized portion quoted above was the extent of Daniel’s pleadings on this claim. “To plead the claims sufficiently, [Daniel] was required to identify the names of the witnesses he alleged should have been interviewed, to plead with specificity what admissible information those witnesses would have provided, and to allege how the result of the proceedings would have been affected by the additional testimony.” Beckworth, — So.3d at -. Daniel failed to comply with the full-fact pleading requirements of Rule 32.6(b), Ala. R.Crim. P.
Also,
“[T]he mere fact that [the defendant] has submitted seventy-eight exhibits of additional information does not prove ineffective assistance of counsel. ‘In reviewing counsel’s performance, a court must avoid using the distorting effects of hindsight and must evaluate the reasonableness of counsel’s performance from counsel’s perspective at the time.’ Chandler [v. United States], 218 F.3d [1305] at 1316 [(11th Cir.2000)] (quotation marks and citation omitted). ‘[I]t is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.’ Strickland [v. Washington], 466 U.S. [668] at 689, 104 S.Ct. [2052] at 2065 [(1984)]. ‘It is common practice for petitioners attacking their death sentences to submit affidavits from witnesses who say they could have supplied additional mitigating circumstance evidence, had they been called, or ... had they been asked the right questions.’ Waters [v. Thomas], 46 F.3d [1506] at 1513-14 [(11th Cir.1995)]. The existence of such mitigating affidavits, however, is of little significance because they usually establish ‘at most the whol *431 ly unremarkable fact that with the luxury of time and the opportunity to focus resources on specific parts of a made record, post-conviction counsel will inevitably identify shortcomings in the performance of prior counsel.’ Id. at 1514. The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel.’ Id. (Quotation marks and citation omitted); see also Chandler, 218 F.3d at 1316 n. 20. Thus, the presence of fifty-two largely cumulative affidavits in the Appendix ... lends little, if any, support to [the defendant’s] ineffective assistance of counsel claim.”
Turner v. Crosby, 339 F.3d 1247, 1279 (11th Cir.2003).
D.
Daniel next argues that counsel was ineffective for failing to explore the possibility that Daniel was mentally retarded and thus ineligible for the death penalty. In his second amended petition, Daniel pleaded that he had been tested when he was 13 years old and it was determined that he had a full-scale IQ score of 77, which, he asserts, adjusting for the “Flynn effect”[11] constitutes an IQ score of 72. He pleaded the following in his amended petition:
“Because the death penalty may not be imposed on individuals suffering from mental retardation, trial counsel’s failure to procure the institutional records that showed even on an outdated IQ test Daniel scored within the borderline range of mental retardation is wholly unreasonable. Indeed, given the pivotal role a diagnosis of mental retardation can play in a death penalty case.... ”
(C. 193.) Attached to Daniel’s amended petition is a copy of a report prepared by Dr. Daniel Marson and Dr. Kristen Trie-bel. Daniel asserted: “Drs. Marson and Triebel concluded that, although his IQ scores on a test they administered revealed Mr. Daniel to have borderline intelligence, ‘Mr. Daniel’s adaptive functioning was severely impaired both prior to and after age 18.’” The report concluded: “[Although Mr. Daniel’s IQ scores as a child and adult do not fully qualify him for a diagnosis of mental retardation, his limitations in adaptive functioning as a boy and young man arguably do.” (C.R. 369.)
At the status hearing on Daniel’s post-conviction petition, the trial court stated the following in regard to counsel’s claim that Daniel was mentally retarded:
“Let me read you something and see if you think that this sounds like a person is mentally retarded. ‘Dear Ms. Haskins and Mr. Hughes: Be advised I have received a letter per Mr. Hughes that is totally unacceptable as to my previous letter of February 21st, '03 requesting the two of you provide me with all copies of discovery evidence that you have receive via the State of Alabama in regard to my criminal case pending in Jefferson County, Alabama. As you are aware of I have been requesting this discovery evidence for many weeks now but neither of you have seen fit to honor my request. Please be advised it is I who is to stand trial, and quite frankly, am facing a sentence of such grave seriousness of the death sentence. Not my mother. That said, it is I who you are to remain in communication with, not my mother. See Alabama Rules of Court, Rule 1.2 and Rule 1.4, Scope of Representation and Communication with *432 Client. See also Rule 34(c). These rules are rules of court a lawyer’s responsibilities, as I know you are well cognizant of. The afore new documents, I instruct you both as legal representatives of the Court, the Alabama Bar Associations members, members of the Birmingham Bar Association, and as my lawyers that represent me in re: State v. Renard Daniel, to promptly do the below for me.
“ T. A motion for a 90-day extension of time filed immediately per the two of you and in my behalf for any and all reasons you see fit and which to have this extension granted, and by the way, for me to:
‘“A. Be immediately mailed for my viewing to me all evidence per the State regarding my case.
“ ‘B. For the two of you to immediately schedule with the Wardens, McDonnell and/or Rowell, at the Kilby Correctional Facility, Mt. Meigs, Alabama, a conference, i.e. client-lawyer conference, ASAP, in which for me to confer with two of you in this case. Due to the grave seriousness and the sentence of death that I possibly face, I request and respect my wishes be promptly met as well as for the cancellation of a transfer to the Jefferson County Jail, and a prompt conference with the two of you and the K.C.F. pursuant to 28 U.S.C. 1746. I swear under penalty of perjury the foregoing is true and correct. I thank you for your time in this regard and look forward to hearing from you, and seeing the two of soon. Respectfully yours, Renard Daniel.’
“Does that sound like that letter was written by somebody that was mentally retarded?”
(Supple. R., p. 30-32.)
The record of Daniel’s trial shows that Daniel testified in his own defense, that he appeared articulate and easily answered the questions put to him, and that he showed no sign of mental retardation. He said that he had been living in an apartment in the complex where the murders took place, that he worked at Hill Top Properties as a roofer, and that he lived one block from Hill Top Properties. Daniel testified that he met George Jackson several weeks before the murders when Jackson was working on his car in the apartment complex parking lot. He said that he and Jackson became friends and that they frequently drank beer together. Daniel testified that Jackson committed the murders.
Also, at a pretrial-motion hearing trial counsel indicated that he was requesting a mental evaluation because of information obtained by Daniel’s mother that he had been diagnosed with ADHD and dyslexia but based on his conversations with Daniel he did not believe that a full-blown evaluation was necessary. (Trial R. 15-20.) Counsel also stated at this hearing that he asked both Daniel and his mother if Daniel had been treated for any mental illness and both indicated that he had not.
The United States Supreme Court in Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), held that it was a violation of the Eighth Amendment to execute a mentally retarded individual but that it was up to the individual states to define mental retardation. Alabama has yet to enact legislation addressing this issue; however, the Alabama Supreme Court in Ex parte Perkins, 851 So.2d 453 (Ala.2002), adopted the most liberal definition of mental retardation. According to Perkins, the defendant must possess: (1) significant subaverage intellectual functioning; i.e., an IQ of 70 or below; (2) significant or substantial deficits in *433 adaptive behavior; and (3) these defects must have manifested themselves during the developmental years; i.e., before the defendant reached the age of 18. Daniel asserts that according to the Flynn effect, his IQ is 72 and he argues that he is retarded and counsel was ineffective for failing to present evidence of mental retardation.
Alabama has yet to address the “Flynn effect.” See Beckworth, — So.3d at - n. 5. The United States Court of Appeals for the Eleventh Circuit has stated:
“[A]ll the experts acknowledged that the Flynn effect is a statistically-proven phenomenon, although no medical association recognizes its validity. Numerous courts recognize the Flynn effect. See e.g., Walker v. True, 399 F.3d 315, 322-23 (4th Cir.2005) (stating that on remand, the district court should consider the Flynn effect evidence to determine if petitioner’s IQ score is overstated); United States v. Davis, 611 F.Supp.2d 472, 486-88 (D.Md.2009) (district court considered Flynn effect in evaluation of defendant’s intellectual functioning); People v. Superior Court, 28 Cal.Rptr.3d 529, 558-59 (Cal.Ct.App.2005), overruled on other grounds by 40 Cal.4th 999, 56 Cal.Rptr.3d 851, 155 P.3d 259 (2007) (recognizing that Flynn effect must be considered); State v. Burke, No. 04AP-1234 ... (Ohio Ct.App. Dec. 30, 2005) [(not reported in N.E.2d)] (stating that court must consider evidence on Flynn effect, but it is within court’s discretion whether to include it as a factor in the IQ score). There are also courts that do not recognize the Flynn effect. See In re Mathis, 483 F.3d 395, 398 n. 1 (5th Cir.2007) (noting that circuit has not recognized Flynn effect as scientifically valid); Berry v. Epps, No. 1:04CV328-D-D ... (N.D.Miss. Oct. 5, 2006) [(not reported in F.Supp.2d)] (refusing to consider Flynn effect); Bowling v. Commonwealth, 163 S.W.3d 361, 374-75 (Ky.2005) (noting that because Kentucky statute unambiguously sets IQ score of 70 as cutoff, courts cannot consider Flynn effect or SEM [standard error of measurement]).”
Thomas v. Allen, 607 F.3d 749, 757 (11th Cir.2010). See also Nava Feldman, Application of Constitutional Rule of Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), that Execution of Mentally Retarded Persons Constitutes ‘Cruel and Unusual Punishment’ in Violation of Eighth Amendment, 122 A.L.R.5th 145 (2004).
Even considering the Flynn effect, Daniel did not plead in his postconviction petition that his IQ was 70 or below.
“In his Rule 32 petition, Powell alleged the following fact as the basis for his claim of mental retardation: ‘Mr. Powell was diagnosed as mildly mentally retarded in the fifth grade by the Lake County, Illinois school system.’ However, Powell did not allege in his Rule 32 petition that his IQ was or is 70 or below, which is’necessary to support a finding of mental retardation in Alabama. See [Ex parte] Perkins, 851 So.2d [453] at 456 [(Ala.2002)]. Because a finding of mental retardation to sustain an Atkins claim requires both significantly subaverage intellectual functioning and significant deficits in adaptive functioning, Powell had failed to plead facts on which an Atkins claim can be based.”
Powell v. Allen, 602 F.3d 1263, 1272 (11th Cir.2010). The same is true in this case— Daniel failed to plead sufficient facts to support an Atkins claim.
Also, counsel stated before Daniel’s trial that based on his conversations with Daniel he did not believe that a full mental *434 evaluation was necessary and that Daniel and his mother told him that Daniel had never been treated for any mental illness. To the extent that Daniel argues that counsel was ineffective for failing to explore the possibility that he is mentally retarded, there is no material issue of fact or law that would entitle Daniel to relief on this claim. See Rule 82.7(d), Ala. R.Crim. P.
E.
Daniel argues that counsel was ineffective for failing to present evidence that Daniel was depressed.
In Daniel’s one-paragraph pleading on this claim, he stated:
“In connection with their neuropsy-chological evaluation of Mr. Daniel, Drs. [Daniel] Marson and [Kristen] Treibel [sic] also concluded that Mr. Daniel is currently ‘severely depressed’ and that it ‘is likely that Mr. Daniel had suffered from depression since childhood.’ ”
(C. 196.) Daniel did not plead that his depression was a factor in the murders, that it was relevant to mitigate the murders, or that he was prejudiced by counsel’s failure to present this evidence at the penalty phase. To satisfy the pleading requirements concerning claims of ineffective assistance of counsel, a petitioner must “plead specific facts indicating that he or she was prejudiced by the acts or omission.... ” Hyde, 950 So.2d at 356. Daniel failed to satisfy this burden.
F.
Daniel next argues that counsel was ineffective for failing to present evidence that his family had a history of mental illness. Specifically, he asserts that counsel should have presented evidence that his mother suffered from severe depression.
Daniel pleaded that his trial counsel should have presented testimony that Daniel’s mother was depressed as a child and hospitalized at the age of 13 after she attempted suicide, that when Daniel was 7 years old his mother suffered depression after learning about her adopted mother’s death, and that she had been prescribed Valium and lithium for her condition at that time.
This claim was correctly summarily dismissed for the reasons that we stated in Beckworth:
“Beckworth argues that the trial court erred when it summarily dismissed the "claim that counsel had rendered deficient performance when they failed to investigate and present evidence of Beckworth’s family history of mental illness and mental retardation.... The trial court did not err when it summarily dismissed this claim because it did not meet the specificity and full factual pleading requirements of Rule 32.3 and Rule 32.6(b).
“First, Beckworth failed to allege any facts indicating why evidence about family members’ mental retardation and mental illness was relevant or that it would have been admissible at his trial. Although the United States Supreme Court held in Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), that a defendant convicted of capital murder must not be precluded from presenting a broad range of proposed mitigating evidence at his sentencing hearing, the Court limited the range to ‘any aspect of a defendant’s character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.’ 438 U.S. at 604, 98 S.Ct. 2954. Although Beckworth alleged in paragraph 142 of his petition that ‘[s]ome forms of mental retardation *435 are genetic’ (C. 40), he failed to allege that the form of mental retardation from which he or his family members allegedly suffered was one of those genetic forms. Beckworth failed to make any factual allegations indicating the relevance of evidence of mental illness in his family. Therefore, Beckworth failed to allege any specific facts indicating that the evidence he says counsel should have discovered and presented was relevant or that it would have been admissible at trial.
“Furthermore, Beckworth failed to allege specific facts regarding how trial counsel could have reasonably discovered this evidence and how, through their allegedly unreasonable actions they failed to discover it.... Finally Beck-worth failed to allege any specific facts indicating how presentation of the evidence would have changed the result at trial.”
— So.3d at -. Like Beckworth, Daniel failed to plead how the evidence of his mother’s mental illness would have been relevant to mitigate the double homicide and how he was prejudiced by the failure to present this evidence. The full facts were not pleaded on this claim; therefore, according to Rule 32.6(d), Ala. R.Crim. P., it was correctly dismissed.
G.
Daniel next argues that counsel was ineffective for failing to present evidence of his alcohol and drug abuse when counsel was in possession of documents that showed that Daniel had a severe addiction. He pleaded: “Given the devastatingly detrimental effect Mr. Daniel’s addictions have had on his life, trial counsel’s decision to limit his presentation in this manner was objectively unreasonable.” (C.R. 199.)
The State argued the following in its motion to dismiss:
“At trial, Daniel’s mother testified that she realized he was using drugs and alcohol when he was about 16 years old. Daniel testified he had been drinking beer and smoking marijuana the night of the murders. Daniel’s testimony, even during cross-examination, was clear and articulate. Further, your Honor considered the fact that Daniel had drank alcohol and used drugs since he was 16 years old in mitigation. Daniel’s testimony about his version of what happened the night of the murders should refute any claim his past use of alcohol and drugs affected his ability to conform his behavior.
“Even if more evidence that Daniel had a history of drug and alcohol abuse had been presented to the jury, there is no reasonable probability the outcome of the penalty phase might have been different.”
(C. 501.)
Evidence concerning Daniel’s use of drugs was presented to the jury through various witnesses at Daniel’s trial. Jackson testified that they both had been drinking beer before the murders and that Daniel drank three or four beers. Also, the circuit court found as mitigation Daniel’s history of substance abuse. There was no material issue of fact or law concerning this claim; thus, it was correctly summarily dismissed. See Rule 32.7(d), Ala. R.Crim. P.
H.
Daniel next argues that counsel was ineffective for failing to present evidence showing that Daniel was raised in extreme poverty. Daniel pleaded the following in regard to this claim:
“Trial counsel also failed to procure human resources records showing that, at times, during his childhood, Mr. Daniel’s family depended upon food stamps *436 or subsidies provide to them by the government. Such evidence should have been obtained and presented to the jury. See Armstrong v. Dugger, 833 F.2d 1430 (11th Cir.1987) (writ issued where counsel failed to investigate and present, among other things, evidence of petitioner’s childhood poverty).”
(C. 199.) This was Daniel’s entire pleading on this issue. Daniel failed to plead how he was prejudiced by counsel’s failure to present evidence that his childhood was marked by poverty or how it was relevant to mitigate the double homicide. See Beckworth, — So.3d at -. Therefore, he failed to comply with the full-fact pleading requirements of Rule 32.6, Ala. R.Crim. P.
I.
Daniel next argues that counsel was ineffective for failing to present mitigating evidence from his mother, sister, and aunt that he had a history of nonviolent behavior.
Daniel pleaded the following in regard to this claim:
“Trial counsel failed to put before the jury evidence of Mr. Daniel’s character or his non-violent past. Both Mr. Daniel’s mother and sister would have testified to Mr. Daniel’s non-violent disposition and told the jury that Mr. Daniel never responded to verbal conflict with physical force and never played the role of aggressor. In addition, Mr. Daniel’s criminal record demonstrates that, with the one exception of the second degree burglary charge introduced by the State Mr. Daniel’s past offenses were all nonviolent, ranging from distribution crimes to criminal trespass. The United States Supreme Court has recognized that evidence of a defendant’s non-violent nature or lack of future dangerousness ‘may alter the jury’s selection of penalty, even if it does not undermine or rebut the prosecution’s death-eligibility case.’ Williams [v. Taylor], 529 U.S. [362] at 398 [(2000)].[12]
“Other members of Mr. Daniel’s family were available to testify as character witnesses at Mr. Daniel’s trial. When she heard that current counsel were representing Mr. Daniel in these proceedings, Mr. Daniel’s aunt, Leila Lawler, volunteered to testify as a character witness on her nephew’s behalf. There is no reason to believe she would have been unwilling to do so at Mr. Daniel’s trial.”
(C. 199-200.)
The State asserted the following in its motion to dismiss:
“Daniel does not proffer what facts could have [been] introduced that would have qualified his mother, his sister, or his aunt to testify about the specific trait for non-violence. Daniel left home when he was 18 years old and spent the four years preceding the murders in prison. Further, if evidence that Daniel did not respond to verbal conflict with physical force was presented, the prosecution could have certainly rebutted it by emphasizing the facts of this case. The *437 jury found beyond any reasonable doubt that Daniel intentionally gunned down two unarmed people in cold blood in their own apartment just because Daniel was offended by what one of them said. Also, even if Daniel’s prior criminal record does not include arrests and/or convictions for many violent crimes, his record could have been considered by the jurors as demonstrating he has a complete disrespect for the law and the rights of others.”
(C. 504-05.)
The record of Daniel’s trial shows that counsel had knowledge of Daniel’s criminal history — it was detailed in the presentence report. Counsel knew that the majority of Daniel’s prior convictions were for nonviolent offenses. As we have stated:
“‘[W]hen faced with overwhelming aggravating circumstances, trial counsel reasonably may conclude that the testimony of certain character witnesses would be of little help to the defense. See Strickland [v. Washington], 466 U.S. [668] at 699, 104 S.Ct. [2052] at 2070-2071 [(1984)]. This is particularly true if such testimony would open the door to presentation of damaging evidence by the prosecution.’ ”
Brooks v. State, 929 So.2d 491, 511 (Ala.Crim.App.2005), quoting Davis v. People, 871 P.2d 769, 773 (Colo.1994).
“[Debatable trial tactics generally do not constitute ineffective assistance of counsel. [State v.] Clayton, 62 Ohio St.2d at 49, 402 N.E.2d 1189 [(1980)]. This court must indulge in a strong presumption that trial counsel’s conduct falls within the wide range of reasonable professional assistance. [State v.] Hartman, 93 Ohio St.3d at 300, 754 N.E.2d 1150 [(2001)]. Significantly, the existence of alternative or additional mitigation theories generally does not establish ineffective assistance of counsel. [State v.] Combs, 100 Ohio App.3d [90,] 105, 652 N.E.2d 205 [(1994)].”
Phillips v. Bradshaw, 607 F.3d 199, 206-07 (6th Cir.2010). There was no material issue of fact or law that would entitle Daniel to relief. See Rule 32.7(d), Ala. R.Crim. P.
J.
Daniel asserts that counsel was ineffective for failing to hire a mitigation expert, Martha Loring, to collect and to testify concerning mitigation evidence at the penalty phase.
“[H]iring a mitigation specialist in a capital case is not a requirement of effective assistance of counsel.” Phillips v. Bradshaw, 607 F.3d at 207-08.
“[The petitioner] claims ‘inadequate preparation and presentation of mitigation evidence,’ because counsel should have hired a ‘mitigation specialist’ to gather mitigating evidence. However, he cites no authority that this is a requirement of effective assistance, and we hold that it is not.”
State v. McGuire, 80 Ohio St.3d 390, 399, 686 N.E.2d 1112, 1120 (1997). See also Jonathan P. Tomes, Damned If You Do, Damned If You Don’t: The Use of Mitigation Experts in Death Penalty Litigation, 24 Am. J.Crim. L. 359 (1997) (“Whether a court casts its grounds for failing to find a constitutional violation of the right to counsel for failure to hire or use a mitigation expert in terms of the defendant’s failure to meet either or both of the Strickland prongs, as a reasonable tactical decision, or as a procedural matter, the result is the same — affirmance of the death penalty in all but the very few cases in which counsel’s performance is so deficient that the defendant can satisfy the high hurdle of Strickland and its progeny.”).
Daniel did not plead that Loring was available to testify at Daniel’s trial. Nor *438 did he plead any facts in his petition that, if true, would establish that it was objectively unreasonable for trial counsel not to hire a mitigation expert. He alleged no additional facts that the mitigation expert could have discovered that he could not have discovered. This claim was correctly summarily dismissed as it failed to meet the pleading requirements of Rule 82.6, Ala. R.Crim. P.
K.
Daniel asserts that counsel was ineffective for failing to present the testimony of other, witnesses at the penalty phase; however, his petition identifies only two witnesses — Daniel’s sister, Tammi Daniel, and Spencer Sims, the stepfather of Loretta McCulloch, one of the victim’s.
Daniel pleaded the following concerning the failure to present his sister’s testimony at the penalty hearing before the jury:
“At the sentencing hearing, trial counsel presented the testimony of Tammi Daniel — a witness who could easily have testified during the penalty phase before the jury. Trial counsel’s choice to have Ms. Daniel testify at the sentencing hearing establishes that trial counsel believed her testimony would be helpful to Mr. Daniel and further highlights the fact that trial counsel unreasonably failed to pursue mitigation evidence that was available prior to the sentencing phase. Thus, trial counsel’s decision not to call Mr. Daniel’s sister to testify before the jury cannot have been the product of a sound trial strategy.”
Daniel failed to plead what testimony Daniel’s sister could have presented at the sentencing hearing before the jury — he failed to plead the full facts in support of this claim. See Rule 32.6(b), Ala. R.Crim. P.
Also, the record shows that the State called Sims at the judicial sentencing hearing and Sims requested that the court spare Daniel’s life. Tammi Daniel also testified at the judicial sentencing hearing and asked the court to spare her brother’s life. Daniel asserts that counsel was ineffective for failing to present this evidence in the penalty phase hearing that was held before the jury.
However,
“ ‘[T]he opinion of a relative of a victim is irrelevant to the jury’s determination of whether the death penalty should be imposed.’ Robison v. Maynard, 943 F.2d 1216, 1217 (10th Cir.), cert. denied, 502 U.S. 970, 112 S.Ct. 445, 116 L.Ed.2d 463 (1991). See also Robison v. Maynard, 829 F.2d 1501, 1504-05 (10th Cir.1987). Such testimony is ‘calculated to incite arbitrary response’ from the jury. Robison, 829 F.2d at 1505.”
Taylor v. State, 666 So.2d 36, 51 (Ala.Crim.App.1994). See also Gaddy v. State, 698 So.2d 1100 (Ala.Crim.App.1995). Counsel is not ineffective for failing to present inadmissible evidence. See Kuehne v. State, 107 S.W.3d at 295. This claim was correctly dismissed because it presented no material issue of fact or law that would have entitled Daniel to relief. See Rule 32.7(d), Ala. R.Crim. P.
L.
Daniel argues that counsel was ineffective because, he asserts, counsel failed to investigate and challenge one of the aggravating circumstances relied on by the State, thereby violating the United States Supreme Court’s decision in Rompilla v. Beard, 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005). Specifically, he asserts that counsel was ineffective for failing to investigate his prior conviction for attempted burglary in the second degree: “Because official government records describing Mr. Daniel’s prior conviction do not even mention the word ‘rape,’ trial *439 counsel should have made some effort to discover how this element of the offense was added.” (C. 207.)
In this case, the circuit court found the existence of three aggravating circumstances: (1) that the murders were committed while Daniel was under a sentence of imprisonment, § 13A-5-49(l), Ala.Code 1975; (2) that the murders were committed after Daniel had previously been convicted of another capital offense or a felony involving the use or threat of violence to the person, § 13A-5-49(2), Ala.Code 1975; and (3) that Daniel intentionally caused the death or two or more persons by one act or pursuant to one scheme or course of conduct, § 13A-5-49C9), Ala.Code 1975.
The record of Daniel’s trial shows that counsel was notified of the aggravating circumstances the State intended to rely on to support a death sentence. The case-action-summary sheet, the affidavit/warrant, and the indictment for Daniel’s prior' burglary conviction are contained in the record of Daniel’s trial. The affidavit/warrant states that Daniel was charged with attempting to enter B.S.’s dwelling. (Trial record, C.R. 317.) The indictment charged that Daniel: “did unlawfully enter the lawfully occupied dwelling house of [B.S.], with intent to commit a theft or a felony therein, to-wit: Rape, in violation of Section 13A-7-6(b) of the Alabama Criminal Code.... ” (Trial record, C.R. 318; emphasis added.) The record does show that the prior burglary conviction involved the underlying offense of rape. Any claim that counsel had no knowledge of the underlying offense is not supported by the record of Daniel’s trial.[13] Counsel was in possession of the case-action summary, the complaint, and the indictment related to the prior offense and did object to the admission of the burglary conviction on other grounds.
The United States Supreme Court in Rompilla held that it was ineffective assistance of counsel for counsel at the penalty phase of Rompilla’s capital trial to not investigate his prior conviction the State of Pennsylvania intended to rely on at the sentencing hearing.
“The Supreme Court noted that its holding was due, in part, to the fact that counsel was aware that the Commonwealth intended to seek the death penalty by relying solely on the aggravating circumstance that the defendant had a significant history of felony convictions involving the use of violence, that the Commonwealth intended to rely on a prior conviction for rape and assault, and that the Commonwealth intended to introduce the transcript of the victim’s testimony to show the defendant’s violent nature.”
Davis v. State, 9 So.3d 539, 567 (Ala.Crim.App.2008). In conclusion, the Rompilla Court noted that the file of Rompilla’s prior conviction contained a veritable cornucopia of potential mitigating evidence concerning Rompilla’s childhood and mental illness.
Unlike Rompilla, Daniel did not plead that any such information existed in the file from Daniel’s prior burglary conviction. Also, in this case the State did not emphasize the prior conviction nor introduce any evidence concerning the prior conviction. This case is factually distinguishable from Rompilla. Given that counsel was aware of the prior burglary conviction and that the underlying offense was rape, counsel could have made a strategic decision to not call further attention to that conviction by introducing specific details about the attempted burglary con *440 viction. See Burgess v. State, 962 So.2d 272 (Ala.Crim.App.2005). Daniel failed to plead sufficient facts to support a Rompilla claim. See Rule 32.7(d), Ala. R.Crim. P.
M.
Daniel argues that counsel’s closing argument at the penalty phase was deficient.
In regard to this claim, the State asserted the following in its motion to dismiss:
“[Counsel] faced a daunting task defending Daniel. The jury found beyond a reasonable doubt that Daniel had murdered two people simply because one of them made a couple of comments that Daniel apparently found offensive. It was also proven beyond a reasonable doubt that Daniel committed the murders while he was on probation for other felony convictions and after he had been convicted of a felony involving violence or the threat of violence to another person. Daniel does not state in his second amended petition what concluding statement [counsel] could have made during the penalty phase that would have been so compelling it could have caused a majority of the jurors to recommend he be sentenced to anything less than death.”
(C.R. 521.) Daniel failed to plead what argument counsel could have made that would have resulted in a different sentencing recommendation in this case or how he was prejudiced; thus, he failed to comply with Rule 32.6, Ala. R.Crim. P.[14]
V.
Daniel last argues that the circuit court erred in dismissing his claim that his appellate counsel was ineffective. Specifically, Daniel pleaded that his counsel was ineffeetive for failing to raise the above numerous claims of ineffective assistance of counsel in the motion for a new trial.
In this section of Daniel’s petition he asserts what new counsel presented at the motion for a new trial hearing and then merely lists a laundry list of claims that should have been presented by new counsel. Clearly, this claim failed to comply with the full-fact pleading requirements of Rule 32.6(b), Ala. R.Crim. P., therefore, it was correctly dismissed.
Moreover, our records of Daniel’s direct appeal show that trial counsel was allowed to withdraw in May 2003 and new counsel was appointed to represent Daniel for his hearing on his motion for a new trial and on appeal. New counsel filed the motion for a new trial in June 2003, before the record was certified as complete. This Court did not receive the transcript of Daniel’s trial until September 22, 2003— after the motion was denied by the circuit court at the conclusion of the motion hearing. After it was continued several times, the hearing was held on September 11, 2003. At the hearing, new counsel indicated that he had part of the record, but not the entire record. Also, counsel did not assert any grounds of ineffective assistance of counsel in his written motion for a new trial. It was only at the motion hearing, after questioning by the circuit court, that newly appointed counsel stated that trial counsel should have presented the testimony of Spencer Sims, the stepfather of one of the victims, that he did not wish Daniel to be sentenced to death and the testimony of Daniel’s sister at the sentencing hearing before the jury. Counsel also indicated that he reserved his right to supplement this argument; however, the circuit court denied the motion at the conclusion of the hearing.
*441 Given the time constraints and the fact that counsel was dealing with a complicated death-penalty case, new counsel could not reasonably have been expected to argue that his trial counsel was ineffective at the motion for a new trial hearing. “ ‘Claims of ineffective assistance of counsel can rarely be determined from the trial record alone,’ ” Hyde v. State, 13 So.3d 997, 1020 (Ala.Crim.App.2007), but require investigation. The Alabama Supreme Court in Ex parte Ingram, 675 So.2d 863 (Ala.1996), stated:
“When a defendant makes a claim of ineffective assistance of trial counsel, and that claim cannot reasonably be presented in a new trial motion filed within the 30 days allowed by Rule 24.1(b), Ala. R.Crim. P., the proper method for presenting that claim for appellate review is to file a Rule 32, Ala. R.Crim. P., petition for postconviction relief.”
675 So.2d at 865 (emphasis added). Counsel was not ineffective for failing to raise the extensive claims of ineffective assistance of counsel that postconviction counsel, with his time and resources, raised in his Rule 32, Ala. R.Crim. P., petition.[15] See also State v. Hamlet, 913 So.2d 493, 499 (Ala.Crim.App.2005) (“This Court has recognized the need for flexibility in considering claims such as the one presented here.”).
For the foregoing reasons, we affirm the circuit court’s summary dismissal of Daniel’s petition for postconviction relief.
AFFIRMED.
WINDOM, KELLUM, BURKE, and JOINER, JJ., concur.

. We have held that a circuit court retains jurisdiction to modify a ruling in a postcon-viction petition for 30 days after that ruling is entered. See Loggins v. State, 910 So.2d 146 (Ala.Crim.App.2005).

. Rules 8, 9, and 10, Alá. R. Civ. P., govern pleadings in civil cases. "Generally, the pleadings, in and of themselves, are considered relatively unimportant because cases are to be decided on the merits.” Johnson v. City of Mobile, 475 So.2d 517, 519 (Ala.1985). Though civil in nature, postconviction petitions are not governed by the Alabama Rules of Civil Procedure. Rule 32.4, Ala. R.Crim. P., states, in pertinent part: "Proceedings under this rule shall be governed by the Rules of Criminal Procedure....”

. It appears that the specific claim that the circuit court may have considered to be procedurally barred was the claim that counsel was ineffective for failing to object to the lack of corroboration of the accomplice’s testimony. (R. 63.) This Court on direct appeal specifically held that George Jackson was not an accomplice as a matter of law. We further held that, even if he was an accomplice, his testimony was sufficiently corroborated to satisfy the requirements of § 12-22-222, Ala. Code 1975. Although the substantive claim supporting the claim of ineffective assistance of counsel was addressed on direct appeal, this claim of ineffective assistance of counsel was not addressed and was not procedurally barred.

. Daniel appears to be citing the standard for pleading civil cases in Alabama and not the requirements for pleading claims in a Rule 32 petition.

. At a status hearing on the postconviction petition, Rule 32 counsel conceded that Jackson could have refused to talk with Daniel's attorneys.

. This letter clearly indicates that Daniel had received some correspondence from one of his trial attorneys.

. " ‘In a criminal prosecution, it is generally agreed that the state is not allowed to introduce evidence of the accused’s bad character until the accused has first entered evidence of his good character.’ ” Dockery v. State, 659 So.2d 219, 220-21 (Ala.Crim.App.1994), quoting C. Gamble, McElroy's Alabama Evidence § 27.01(1) (4th ed.1991). See also Rule 404, Ala. R. Evid.

. We have taken judicial notice of our records related to Daniel’s direct appeal of his capital-murder conviction. See Hull v. State, 607 So.2d 369, 371 (Ala.Crim.App.1992).

. To protect the anonymity of the juror, we are using her initials.

. Daniel offered a different version of these events in his first amended petition.

. "The Flynn Effect ... posits that, over time, the IQ scores of a population rise without corresponding increases in intelligence and thus the test must be re-normalized over time.” In re: Mathis, 483 F.3d 395, 398 n. 1 (5th Cir.2007).

. “In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court found that counsel's performance was deficient because counsel did not begin to investigate mitigation evidence until a week before trial and counsel 'failed to conduct an investigation that would have uncovered extensive records graphically describing Williams’ nightmarish childhood, not because of any strategic calculation but because they incorrectly thought that state law barred access to such records.’ 529 U.S. at 395."
State v. Gamble, 63 So.3d 707, 713 (Ala.Crim.App.2010).

. Rule 32 counsel stated at a status hearing that he was unable to secure a transcript of the guilty-plea colloquy for Daniel's prior burglary conviction.

. Daniel also argues that counsel was ineffective at the penalty phase of his capital trial for the above-stated reasons. This claim appears to be a restatement of the above arguments.

. We may affirm a circuit court’s ruling on a postconviction petition if it is correct for any reason. See Lee v. State, 44 So.3d 1145, 1149 (Ala.Crim.App.2009).